30 P.3d 474 (2001)
144 Wash.2d 583
In re the RECALL OF LAKEWOOD CITY COUNCIL MEMBERS, Bill Harrison, Pos. 1; Ann Kirk Davis, Pos. 2; Sherri Thomas, Pos. 3; Jose Palmas, Pos. 4; Doug Richardson, Pos. 5; Larry Humphrey, Pos. 6; and Claudia Thomas, Pos. 7.
No. 69770-1.
Supreme Court of Washington, En Banc.
Considered March 7, 2001.
Decided September 6, 2001.
*475 David Anderson, Ron Cronk, Lisa L. Shanahan, John Arbeeny, Robert V. Zemmers, Todd Smith, Lakewood, for Appellant.
Joseph F. Quinn, Tacoma, for Respondent.
CHAMBERS, J.
Pro se Zemmers, John Arbeeny, David G. Anderson, Ron Cronk, Lisa L. Shanahan, and Todd Smith appeal from a judgment dismissing their recall petitions against the members of the Lakewood City Council. We affirm.
Appellants alleged that respondents violated the Open Public Meetings Act, chapter 42.30 RCW, by meeting in closed session on December 13, 1999 to discuss with the city manager and city attorney a lawsuit challenging the constitutionality of Initiative 695, or, in the alternative, asking the courts to authoritatively construe the voter approval requirements of the initiative. Lakewood joined only to the latter portion of the lawsuit.
At the hearing to determine the sufficiency of the charges, the superior court heard testimony *476 from the petitioners and examined declarations from council members, the city attorney, and the city manager. Based on this evidence, the court determined that the petition was factually and legally insufficient as the petitioners had failed to establish the council members had violated the Open Public Meetings Act.
This Court reviews recall petitions using the same criteria as the superior court. In re Recall of Shipman, 125 Wash.2d 683, 684, 886 P.2d 1127 (1995). The fundamental requirement is that the charges be both factually and legally sufficient. Id. "To be legally sufficient, the petition must state with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office." Chandler v. Otto, 103 Wash.2d 268, 274, 693 P.2d 71 (1984).
A discussion with counsel about litigation is not on its face substantial conduct amounting to misfeasance, malfeasance, or violation of the oath of office. Arguably, a violation of the Open Public Meetings Act would be. However, this Court finds no violation. Under the statute, the attorney/client privilege exception is available when the relevant agency (1) discusses with counsel (2) actual or potential litigation (3) where public knowledge of the discussion is likely to cause adverse legal or financial consequence. See former RCW 42.30.110(1)(i) (1989).
Elements (1) and (2) are not disputed, only element (3) whether adverse consequences were likely. Petitioners argue that since the council joined only the portion of the Initiative 695 lawsuit seeking clarification, no adverse consequences were likely, and therefore this exception is not available.
The Legislature sought to balance the public policy against secrecy and governmental affairs and the attorney/client privilege. In our jurisprudence, the attorney/client privilege has its foundation in the United States Constitution. Its constitutional foundation is found in the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to counsel and the due process clause of the Fourteenth Amendment. These rights can only be protected if there is candor and free and open discussion between client and counsel.
Adopting petitioners' reading of the statute would require us to find the legislature intended to put public officials in the untenable position of determining before hand whether the disclosure of discussion with counsel is or is not likely to cause adverse legal consequence. This hypertechnical reading of former RCW 42.30.110(l )(i) would effectively require elected officials to determine before discussing with counsel whether the discussion fell within the attorney/client safe harbor provision of the Open Public Meetings Act. A more sustainable interpretation of (3) is that the attorney/client privilege is not available when from an objective standard an agency should know before hand that the discussion is benign and will unlikely result in adverse consequences. A candid discussion with counsel of the legal risk and consequences of potential litigation is specifically contemplated by former RCW 42.30.110(1)(i). No such knowledge has been alleged. Therefore, we hold this discussion fell within the attorney/client privilege exception and the council members were not in violation of the Open Public Meetings Act for meeting in executive session.
Petitioners argue further that the council members "voted" in executive session when they did not block the city manager's decision to join the Initiative 695 lawsuit. Votes must be taken in public. RCW 42.30.060. However, the trial court clearly concluded no vote was taken. Verbatim Report of Proceedings at 69. We will affirm the trial court's factual conclusions so long as substantial evidence exists supporting the trial court's conclusions. Miller v. City of Tacoma, 138 Wash.2d 318, 323, 979 P.2d 429 (1999). We note the city manager had the authority and the discretionary spending power to join the lawsuit. Lakewood City Resolution No.1999-39. The city manager asked the council to go into executive session to discuss his decision to join the lawsuit, and to give the council members an opportunity to discuss with counsel the advantages, disadvantages, and risks of various courses of *477 action. Substantial evidence supported the trial judge's conclusion that the Lakewood City Council did not vote as the term is used in the Open Public Meetings Act. In light of the substantial evidence supporting the trial court's conclusion that the council members conduct fell within the exception for attorney/client discussion and the implicit finding that no vote was taken, we find the council members took no prohibited action in executive session. See, e.g., Miller, 138 Wash.2d at 332, 979 P.2d 429 (Madsen, J., concurring in part, dissenting in part).
We find the petition is legally insufficient. The meeting fell within the attorney/client privilege exception to the Open Public Meetings Act, former RCW 42.30.110(1)(i). This conversation was with counsel about actual litigation. Adverse consequence could have flowed from public knowledge of the preliminary discussions with counsel. We therefore affirm the trial judge's dismissal of the recall petition.
Affirmed.
SMITH, JOHNSON, IRELAND, BRIDGE, and OWENS, JJ., concur.
SANDERS, J. (dissenting).
This case proves the exception to the rule that "no one knows what goes on behind closed doors."[1] No doubt disclosure is sometimes embarrassing to public servants who would prefer to act behind a veil of secrecy for reasons of political expediency; however, secrecy is precisely what the Open Public Meetings Act (OPMA), chapter 42.30 RCW, was designed to prevent.
This is a recall petition case. But the majority's opinion is premised on a profoundly mistaken view of the OPMA, and undercuts the very foundation of the act.
At its heart this proceeding focuses on a narrow exception to the open meeting requirement of the OPMA. Under this exception governing bodies such as the Lakewood City Council may hold executive sessions only to (1) discuss litigation matters with legal counsel, (2) if, and only if, public knowledge of the discussion would likely result in adverse legal or financial consequences to the agency. I posit the majority's decision necessarily defeats the narrow statutory limits to this exception, thereby undermining the broad protections afforded the public by the OPMA. It invites secrecy in governance and shields public officials from public responsibility for their acts.
As detailed below, the facts alleged by petitioners establish not one, but three, prima facie violations: (1) the Lakewood City Council conducted an executive session absent a demonstrated likelihood of adverse legal or financial consequences if the same discussion were held in public; (2) unauthorized third persons were present at the executive session; and (3) the city council took "action" behind closed doors under the guise of an exception which only, at most, permits discussion with legal counsel.
Although my colleagues correctly articulate the standard to review recall matters, they err in its application. Factual and legal sufficiency of recall petitions is determined based on the facts as alleged by the petitioner. The ultimate truth of the charges is for the electorate to determine, not this court. RCW 29.82.023; Chandler v. Otto, 103 Wash.2d 268, 274, 693 P.2d 71 (1984). For a recall petition to reach the voters there need only be "a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office." Id. As our laws expressly recognize the right of our fellow citizens to recall elected officials who betray their public trust, this court must be unyielding in the protection of that valued right.

I. FACTS
These city council members repaired to secret session from a public meeting on the evening of December 13, 1999. The city council went behind closed doors to discuss the city manager's proposal to use public resources to join politically motivated litigation to defeat Initiative 695 (I-695). Participants at this executive session included not only the full membership of the Lakewood City Council, but also City Attorney Daniel B. Heid and City Manager Scott Rohlfs. *478 Other members of the public were barred from the meeting.
In secret the council discussed the pros and cons of challenging I-695, including potential alternatives. At the end of the session members of the council evidenced the support necessary to commit city resources to join the litigation, thus prompting the city manager to cause the municipality to intervene in pending litigation at taxpayer expense.
Subsequent to the December 13 executive session several of the petitioners met with or otherwise contacted members of the Lakewood City Council to discover what had happened. The following conversations with city council members are recounted by sworn declaration in the record before us:
[Council member] Ann Kirk Davis: "I was in favor. I agreed to go ahead to allow the attorney to join with Bainbridge Island and Bremerton."
Deputy Mayor Claudia Thomas: "I voted yes in agreement ... it was not a vote though. We don't need to vote on litigation matters. It is enough to approve. You can say you concur but you cannot vote. In that I said `I voted', I misquoted."
[Council member] Larry Humphrey: "That vote was in Executive Session and I just don't want to say. It's not pertinent."
[Council member] Sherri Thomas: "There was no vote. It's a matter of consensus. If it doesn't get a bunch of objections. The law does allow discussion to the point of consensus."
Clerk's Papers (CP) at 8-9.
Three legal questions are therefore presented: (1) whether the December 13 executive session was lawfully commenced under the OPMA; (2) whether third persons may attend; and (3) whether the legal scope of the executive session was exceeded because of the city council's conduct in the executive session.

II. ANALYSIS
A. The Executive Session Was Unlawfully Commenced because Public Knowledge of the Discussion Would Not Likely Result in Adverse Legal or Financial Consequences
Instead of requiring respondents to comply with the clear and unequivocal language of former RCW 42.30.110(l )(i) (1989), the majority holds an executive session is unlawful only "when from an objective standard an agency should know beforehand that the discussion is benign and will unlikely result in adverse consequences." Majority at 3. This formulation is a far cry from the statutory text.
Only under certain limited circumstances may a governing body hold an executive session. See RCW 42.30.110. The exception at issue is narrowly defined:
Nothing contained in this chapter may be construed to prevent a governing body from holding an executive session during a regular or special meeting:
....
[t]o discuss with legal counsel representing the agency matters relating to ... litigation or potential litigation ... when public knowledge regarding the discussion is likely to result in an adverse legal or financial consequence to the agency.
RCW 42.30.110(1)(i) (emphasis added).[2]
The facts of this proceeding require us to construe the exception set forth by RCW *479 42.30.110(1)(i) in the context of the OPMA as a whole. The primary purpose in statutory construction is to determine and give effect to legislative intent. Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997). The intent of the Legislature is primarily derived from statutory language. Id. When this language is clear and unequivocal, we must assume "the Legislature meant exactly what it said and apply the statute as written." Id.
The language of the OPMA as applied to these facts is clear and unequivocal. RCW 42.30.110(1)(i) imposes two requirements which must be met before an executive session may be held: first, it must be a discussion by a governing body with legal counsel, and second, adverse legal or financial consequences must likely follow if the discussion were in a meeting open to the public. To assume, as the majority suggests, open and public meetings are required only when the discussion is "benign" is simply judicial legislation. The statute means what it says, not necessarily what we think it should mean.
Nor does the Legislature's most recent amendment to RCW 42.30.110(1)(i) allow executive sessions under the circumstances suggested by the majority:
[RCW 42.30.110(1)(i)] does not permit a governing body to hold an executive session solely because an attorney representing the agency is present. For purposes of this subsection (1)(i), "potential litigation" means matters protected by RPC 1.6 or RCW 5.60.060(2)(a).
Laws of 2001, ch. 216, § 1. If anything, this amendment evinces further legislative intent[3] regarding the scope of RCW 42.30.110(1)(i): that merely the presence of an attorney is not in itself sufficient to justify an executive session.
Most alarmingly, the majority frustrates the clear open meeting requirement expressed in RCW 42.30.030. This provision is the very foundation of the OPMA. It must be liberally construed to ensure the purpose of the OPMA is accomplished. See RCW 42.30.910.[4] Conversely, exceptions such as this must be narrowly construed to ensure maximum public access to the decision-making process of public agencies. Miller v. City of Tacoma, 138 Wash.2d 318, 324, 979 P.2d 429 (1999).
The burden to establish an exception to the open meeting requirement rests squarely on its proponent. Even assuming this city council discussion was only "with legal counsel," an executive session is nevertheless unlawfully commenced unless the city council members also demonstrate adverse legal or financial consequences would likely result if the discussion was held in public.
The subject of this executive session was nothing more than whether the city should join a battle for political turf centered on a voter initiative that would reduce tax revenue for cities such as Lakewood. Cf. Associated Press v. Bd. of Pub. Educ., 246 Mont. 386, 804 P.2d 376, 379-80 (1991) (striking down an executive session to discuss agency's litigation against governor over rule-making authority). But there is nothing about this subject matter which required it be discussed in executive session. It is far removed from the typical case in which executive sessions are deemed permissible. See, e.g., Markowski v. City of Marlin, 940 S.W.2d 720, 722-23, *480 725 (Tex.App.1997) (approving executive session to discuss with legal counsel lawsuit brought by terminated fire chief and fire captain); Cool Homes, Inc. v. Fairbanks N. Star Borough, 860 P.2d 1248, 1260 (Alaska 1993) (approving executive session to discuss with legal counsel litigation in which board members faced potential personal liability); Minneapolis Star & Tribune Co. v. Housing & Redevelopment Auth., 310 Minn. 313, 251 N.W.2d 620, 621, 625 (1976) (approving executive session to discuss with legal counsel litigation challenging city agency's environmental impact statement); Herald Publ'g Co. v. Barnwell, 291 S.C. 4, 351 S.E.2d 878, 882 (Ct.App.1986) (approving executive session to hear presentation by legal counsel on Environmental Protection Agency action against city's water treatment plant).
Executive sessions are not proper to shield public officials from potentially unfavorable political consequences of their actions if publicly disclosed. Such misuse of the exception would defeat the very purpose of the OPMA. Nor have these council members shown how the City of Lakewood would suffer legally or financially had the council's I-695 discussion been held in public. The majority cannot even suggest how that might be the case.
In fact, one cannot imagine how a public discussion of this topic, per se, could conceivably prejudice the legal or financial interests of the city. The pending litigation was not even against the city. It was for declaratory relief against the state. The litigation was in the nature of a facial challenge, not even fact specific. Cf. Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 11 P.3d 762 (2000).
I challenge the majority to identify even a single adverse legal or financial consequence which arguably would befall the city had this discussion been held in public rather than in secret. Absent such a likely consequence, a prima facie violation of the OPMA has been established, requiring consideration by the electorate at a recall election.
B. This Executive Session Exceeded the Statutory Scope Because an Unauthorized Person Was Present
The majority also fails to consider that only statutorily designated persons are allowed to be present in executive sessions. The exception at hand is very specific as to its limits: A "governing body" may hold an executive session only to "discuss with legal counsel." RCW 42.30.110(1)(i). A "governing body"
means the multimember board, commission, committee, council, or other policy or rule-making body of a public agency, or any committee thereof when the committee acts on behalf of the governing body, conducts hearings, or takes testimony or public comment.
RCW 42.30.020(2). Under this exception, the governing body is simply not at liberty to include some members of the public while excluding others.
The City of Lakewood operates under a council-manager form of government, which makes the city manager and council two separate entities. See RCW 35.18.010. The city manager is appointed by the city council to serve as chief executive officer. Id. The city manager is therefore not a member of the city council, and hence not part of the "governing body" permitted to be present at an executive session held under RCW 42.30.110(1)(i). Cf. School Bd. of Duval County v. Florida Publ'g Co., 670 So.2d 99, 100 (Fla.Dist.Ct.App.1996) (declaring a provision which expressly allowed a governing body and its executive officer to discuss litigation matters with legal counsel in executive session was not intended to allow "nondesignated personnel" to be present).
Without dispute, City Manager Rohlfs was present at the December 13 executive session. He was neither a member of the governing body nor was he its legal counsel. An executive session that included his presence was therefore prima facie outside the scope of the exception. This is a second proper basis to recall the city council members who met in secret.
C. The Lakewood City Council Unlawfully Took "Action" in Executive Session
The majority asserts the city council "took no prohibited action" during the December 13 executive session. Majority at 476. This *481 claim is apparently based on the misapprehension that the council's activities behind closed doors did not constitute a "vote as the term is used in the Open Public Meetings Act." Majority at 476. Wrong for two reasons:
First, by concluding the city council did not vote, the majority impermissibly weighed the truth of petitioners' charges. When reviewing the factual and legal sufficiency of recall petitions, a "court shall not consider the truth of the charges." RCW 29.82.023; Chandler, 103 Wash.2d at 274, 693 P.2d 71. We must accept the facts as alleged by the petitioners. Petitioners here allege council member Humphrey, when asked what happened during the December 13 executive session, responded: "That vote was in Executive Session." CP at 8 (emphasis added). Mayor Harrison is quoted as suggesting concerned citizens of Lakewood "`contact each individual councilmember and ask them how they voted.'" Br. of Appellants, App. B at 10 (emphasis added). Accepting these declarations on their face, as we must under RCW 29.82.023, if not their reasonable inferences, the Lakewood City Council indeed "voted."
Second, regardless of whether or not the city council actually "voted," the majority's conclusion the council took no prohibited action is the result of another misreading of the OPMA. Contrary to what the majority suggests, the open meetings requirement does more than merely prohibit voting in executive session; it prohibits all forms of "action" behind closed doors. See RCW 42.30.030,.020(4). "Action" includes activities such as "discussions, considerations, reviews, [and] evaluations." RCW 42.30.020(3). Whether or not a formal vote took place, there can be no doubt the Lakewood City Council discussed, considered, reviewed, and evaluated, and ultimately decided to join, the I-695 litigation. The council members candidly admit they discussed the pros and cons of challenging I-695 and reviewed potential alternatives. Each council member exchanged his or her individual views on whether the city manager should get the city involved in the litigation, after which agreement, or consensus, was reached between them that the city should indeed intervene in the pending litigation.
Both the definition of "action" and the exception at issue in this proceeding refer to "discussions." Compare RCW 42.30.020(3), with RCW 42.30.110(1)(i). All discussions that constitute "action" must be taken at a public and open meeting. RCW 42.30.030. But a discussion "with legal counsel" may take place in executive session if having it in public is likely to result in adverse legal or financial consequences. RCW 42.30.110(1)(i). Thus, the question arises: Was the Lakewood City Council's activities behind closed doors a discussion "with legal counsel" that may properly take place during an executive session, or was it a discussion other than "with legal counsel" which must take place at an open and public meeting?
Answering this question requires us to read the OPMA, chapter 42.30 RCW, in pari materia. In so doing, it becomes apparent any discussion that does not meet the requirements of the executive-session exception expressed in RCW 42.30.110(1)(i) is a discussion to which RCW 42.30.020(3) refers. There is no middle ground. There is no third category of "discussion." A discussion either fits within the exception or it does not. If not, it is a "discussion" to which RCW 42.30.020(3) refers. Such a discussion constitutes "action" and must take place at an open and public meeting. RCW 42.30.030.
This exception only permits a governing body to discuss litigation matters "with legal counsel." RCW 42.30.110(1)(i) (emphasis added). It does not permit discussions with anyone other than legal counsel. Nor does it permit secret discussions among the various members of the governing body (simply because they are in the presence of legal counsel), or secret decisions to follow a course of action. See Laws of 2001, ch. 216, § 1.
Once any discussion begins among members of the governing body regarding what action is to be taken based upon advice from counsel, the justification for an executive session held pursuant to RCW 42.30.110(1)(i) ends. See City of Prescott v. Town of Chino Valley, 166 Ariz. 480, 803 P.2d 891 (1990); Smith County Educ. Ass'n v. Anderson, 676 S.W.2d 328 (Tenn.1984). Such a discussion is *482 not one "with legal counsel," but rather one between different members of the governing body. As such, it falls outside the scope of the exception and into the general definition of "action" in RCW 42.30.020(3).
Here, the Lakewood City Council did not limit its activities to those within the scope of the exception. Behind closed doors the city council members engaged in a discussion in which they individually gave their views on the city manager's proposal to join the I-695 litigation. This discussion eventually resulted in an agreement or consensus to join in. Such is not merely a discussion "with legal counsel"; it is a discussion with each other resulting in a decision to commit tax resources to defeat I-695. Such activities are not authorized by RCW 42.30.110(1)(i) to take place in executive session.
Aside from discussion, "action" also includes making a decision. RCW 42.30.020(3). In Miller we rejected a claim that an "informal vote" was exempt from the open meeting requirement of RCW 42.30.030. We held "only the [activity] explicitly specified by the exception may take place in executive session." Miller, 138 Wash.2d at 327, 979 P.2d 429. A governing body must take care to strictly limit its conduct in executive session to that authorized by the relevant exception. Id. at 327, 979 P.2d 429; cf. Steele v. Honea, 261 Ga. 644, 409 S.E.2d 652, 654 (1991); St. Cloud Newspapers, Inc. v. District 742 Cmty. Schs., 332 N.W.2d 1, 4-5 (Minn.1983); Multimedia Publ'g of N.C., Inc. v. Henderson County, 136 N.C.App. 567, 525 S.E.2d 786, 791 (2000).
Whether or not the Lakewood City Council formally voted during the December 13 executive session, there is no doubt it took "action." As a result of the council's activities behind closed doors, the City of Lakewood became committed to join the I-695 litigation and city resources were diverted to fund the challenge. Cf. Miller, 138 Wash.2d at 336, 979 P.2d 429 (Madsen, J., concurring in part and dissenting in part) (indicating the type of activity during an executive session that is prohibited by the OPMA is one that commits the agency to a course of action).
Since this "action" was taken behind closed doors, it establishes a third prima facie violation of the OPMA, and therefore serves as a third independent basis to require a recall election.

III. CONCLUSION
The majority not only ignores the plain language of the OPMA and the Legislature's most recent clarification of RCW 42.30.110(1)(i), it also stands alone, isolated, and in stark contrast to precedent construing similar provisions in other states. See, e.g., City of Prescott, 803 P.2d at 896 (excluding from the exception discussions among the members of a governing body regarding what action to take based on advice from legal counsel); Minneapolis Star & Tribune Co., 251 N.W.2d at 626 (emphasizing the exception should be construed narrowly and not "be applied as a barrier against public access to public affairs"); Smith County Educ. Ass'n v. Anderson, 676 S.W.2d 328, 334 (Tenn.1984) (same).
Rather than defeating the statutory limitations on an executive session, we must follow the clear and unequivocal language of RCW 42.30.110(1)(i): (1) A discussion with legal counsel on matters relating to litigation may take place in executive session only when public knowledge of the discussion would likely result in adverse legal or financial consequences to the agency; (2) the only persons authorized to be present are the members of the governing body and its legal counsel; and (3) nothing beyond discussion with legal counsel may occur.
Limiting a governing body's ability to hold executive sessions protects the people's right to participate whenever feasible in the decision-making process of public agencies. See McComas v. Bd. of Educ., 197 W.Va. 188, 475 S.E.2d 280, 283, 289 (1996) (favoring a commonsense approach to and expansive reading of the open meeting requirement). It prevents those who would govern from engaging in general policy discussions under a cloak of secrecy based on the pretext that legal counsel is present. Open government is the legislative purpose that animates the OPMA. See RCW 42.30.010.
Proper application of the standard of review in recall matters to this case demonstrates *483 all three criteria for an executive session were violated. I therefore dissent.
ALEXANDER, C.J., concurs.
NOTES
[1] Charlie Rich, Behind Closed Doors, on BEHIND CLOSED DOORS (Epic 1973).
[2] The majority refers to former RCW 42.30.110(1)(i) as the attorney-client privilege exception, majority at 476, and other jurisdictions employ similar phrases. See, e.g., Peters v. County Comm'n of Wood County, 209 W.Va. 94, 543 S.E.2d 651, 652-53 (2000) (referring to a similar exception as "the attorney-client privilege exception"); Minneapolis Star & Tribune Co. v. Housing & Redevelopment Auth., 310 Minn. 313, 251 N.W.2d 620, 621, 625-26 (1976) (referring to a similar exception as "the attorney-client exception"); Cool Homes, Inc. v. Fairbanks N. Star Borough, 860 P.2d 1248, 1261 (Alaska 1993) (referring to a similar exception as the "lawyer-public body exception"). However, this phrase is most misleading since a careful reading of RCW 42.30.110(1)(i) reveals this exception is actually narrower than the attorney-client privilege. Unlike the privilege, the exception applies only when adverse legal or financial consequences are likely to result from conducting a discussion with legal counsel in public. Referring to RCW 42.30.110(1)(i) as the "attorney-client privilege exception" presents the risk that, at some point, the scope of the exception may merge into the scope of the privilege. Such a merger would effectively eliminate the express requirement in RCW 42.30.110(1)(i) to show a likelihood of adverse legal or financial consequences prior to holding an executive session to consult with counsel.
[3] Although not in effect at the time of the events in this case, this amendment nevertheless sheds light on the proper scope of RCW 42.30.110(1)(i). An amendment may be applied retroactively if it was intended to clarify rather than change the law. Magula v. Benton Franklin Title Co., 131 Wash.2d 171, 182, 930 P.2d 307 (1997). Here, the amendment expressly refers to RPC 1.6 and RCW 5.60.060(2)(a) to define "potential litigation" and clarifies that mere presence by counsel is insufficient to justify an executive session. Thus, it is a clarification.
[4] The purpose of the OPMA is provided in RCW 42.30.010:

The legislature finds and declares that all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.