Because I believe that this case raises issues that merit reversing the dismissal and remanding the case for further proceedings, I respectfully dissent.
 I.
The trial court, granting the motion to dismiss filed by Dr. Thomas W. Tenbrunsel, Dr. Lois H. Pope, and Alabama Psychological Services Center, LLC, seems to have assumed that the psychotherapist-patient privilege is merely a statutory creation and therefore subject to whatever encroachments, limits, or modifications the Legislature may choose to impose. But good reasons exist to conclude that the privilege is more than statutory. Alabama Code 1975, § 34-26-2, provides:
 "For the purpose of this chapter, the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychological technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed."
Psychotherapy as an organized professional discipline dates back to the 1800s. The psychotherapist-patient privilege therefore does not have the common-law background of the attorney-client privilege, but it nevertheless enjoys a high status in our legal system. In Jaffee v. Redmond, 518 U.S. 1,116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the United States Supreme Court recognized the importance of the psychotherapist-patient privilege and some of its similarities with other privileges:
 "Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is `rooted in the imperative need for confidence and trust.' [Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).] Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment. As the Judicial Conference Advisory Committee observed in 1972 when it recommended that Congress recognize a psychotherapist privilege as part of the Proposed Federal Rules of Evidence, a psychiatrist's ability to help her patients "`is completely dependent upon [the patients'] willingness *Page 1270 
and ability to talk freely. This makes it difficult if not impossible for [a psychiatrist] to function without being able to assure . . . patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule . . ., there is wide agreement that confidentiality is a sine qua non for successful psychiatric treatment."'"
518 U.S. at 10, 116 S.Ct. 1923 (footnote omitted).
Section 34-26-2 mandates that the psychotherapist-patient privilege be "placed upon the same basis" as the attorney-client privilege. A brief analysis of the attorney-client privilege is therefore necessary to evaluate the status of the psychotherapist-patient privilege.
The attorney-client privilege has been described as "perhaps the most sacred of all legally recognized privileges." 81 Am.Jur.2d Witnesses § 327 (2004), citing United States v.Bauer, 132 F.3d 504 (9th Cir. 1997). That treatise further states:
 "The constitutional foundation for the attorney-client privilege is found in the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to counsel, and the Due Process Clause of the Fourteenth Amendment; these rights can be protected only if there is candor and free and open discussion between client and counsel."
81 Am.Jur.2d Witnesses § 328; see In re Recall of LakewoodCity Council Members, 144 Wash.2d 583, 30 P.3d 474 (2001). See, also, Lieutenant Colonel Norman K. Thompson, USAF, and Captain Joshua E. Kastenberg, USAF, The Attorney-Client Privilege:Practical Military Applications of a Professional Core Value, 49A.F.L.Rev. 1, 34-38 (2000). Thompson and Kastenberg observe that the attorney-client privilege is also based upon English common law at least as early as the reign of Elizabeth I in the 1500s and possibly earlier. Id. at 3.
Alabama Code 1975, § 1-3-1, provides:
 "The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature."
The attorney-client privilege rests upon firm common-law, statutory, and even constitutional foundations, and § 34-26-2
places the psychotherapist-patient privilege "upon the same basis" as the attorney-client privilege. If the psychotherapist-patient privilege and the attorney-client privilege are "upon the same basis," and if the Legislature is free to encroach upon the psychotherapist-patient privilege whenever and however it sees fit as the main opinion seems to say, then the Legislature is free to encroach upon the attorney-client privilege as well. Such an encroachment could have a devastating impact on the judicial system.
The attorney-client privilege rests upon the premise that an attorney cannot properly defend a client, and thus the judicial system cannot effectively do justice, unless the client knows that he or she is fully free to disclose to an attorney the details of his or her case in strict confidentiality. In much the same way, psychotherapy rests upon the assurance of confidentiality. The patient discloses to the psychotherapist the most intimate details of his or her life, the most private actions, and the innermost thoughts. The patient discloses to the psychotherapist matters that the patient might not disclose even to an attorney, a clergyman, or a spouse. Without such disclosure psychotherapy cannot function successfully, and without the assurance of *Page 1271 
confidentiality such disclosure will be greatly impeded.
I am hesitant to recognize a right to privacy that is nowhere mentioned in the United States Constitution, and I am reluctant to identify within that so-called right to privacy all sorts of "rights" that may be no more than a judge's preferences as to what social policy should be. But the courts have been recognizing a right to privacy since at least 1965, when the United States Supreme Court decided Griswold v. Connecticut,381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and a patient's right to enter into a privileged confidential relationship with a psychotherapist seems at least as central to the concept of privacy as many other "rights" the courts have recognized and protected under this rubric.
If the psychotherapist-patient privilege is protected under the privacy guarantees of the United States Constitution, then courts should consider what level of protection this right is to be accorded and in what situations a state's interest is of sufficient magnitude to justify infringing upon this right.
 II.
Dr. Tenbrunsel and the other defendants argue that this Court should not consider Marks's claim that the psychotherapist-patient privilege has a constitutional basis, because Marks failed to raise the constitutional issue in the circuit court and because he failed to notify the Attorney General that he was raising a constitutional challenge to a statute. (Tenbrunsel's brief, pp. 26-27.) Marks responds that "since testimonial privileges are rooted in common law and are authorized in the 14th Amendment, I asserted the Fifth Amendment every time I used the word Privilege." (Marks's reply brief, p. 20.) He also argues:
 "That the Attorney General was not notified of the constitutional issues by a pro se appellant unfamiliar with the intricacies of court processes is surely an excusable error. While I have not researched the issue, I feel confident this Court makes accommodations for unintended procedural errors by pro se litigants. I now ask the Court for such accommodations if available and the opportunity to address any error which may prejudice my case."
(Marks's reply brief, p. 21.)
I am mindful of the dangers of relaxing procedural rules too much for pro se litigants. Doing so can increase the workload of this Court and of parties opposing a pro se litigant and may even encourage a litigant to decide to proceed pro se when an attorney is really needed. Nevertheless, this Court has followed a rule of liberal construction when dealing with the pleadings of pro se litigants. Reversing the judgment of the Court of Criminal Appeals in Ex parte Deramus, 882 So.2d 875, 877 (Ala. 2002), this Court unanimously held that "[t]he Court of Criminal Appeals has generally construed petitions from inmates acting pro se liberally, and has generally treated a mislabeled petition for a writ of habeas corpus when the relief requested could be sought only by a petition for a writ of habeas corpus."
Nor is this rule of liberal construction limited to criminal cases. The Committee Comments on the 1973 Adoption of the Alabama Rules of Civil Procedure declare: "It has been said that the policy of rules such as these is to disregard technicality and form in order that the civil rights of litigants may be asserted and tried on the merits." And in Brandon v. HumanaHospital-Huntsville, 598 So.2d 950, 951 (Ala.Civ.App. 1992), the Court of Civil Appeals applied the rule even to litigants represented by counsel: "The Rules of *Page 1272 
Civil Procedure are to be construed liberally to effect the purpose of the rules, and, under the rule of liberal construction, every reasonable intendment and presumption must be made in favor of the pleader."
In his brief to this Court (see pp. xii, 19-23, 24-26), Marks has clearly set forth an argument that "Alabama's Psychotherapist-Patient Privilege Provisions Also Have Their Roots in the U.S. and Alabama Constitutions." In his pleadings in the circuit court he clearly stated his argument that the reporting requirements of § 26-14-3 and § 26-14-4 violate the psychotherapist-patient privilege, and he clearly argued the importance of that privilege, even if he failed to allege clearly that the privilege rests on a constitutional foundation.
I believe this Court should reverse the trial court's judgment of dismissal and remand the case to the circuit court where the issue whether and, if so, to what extent the psychotherapist-patient privilege has a constitutional foundation can be litigated. The defendants and the Attorney General will have full opportunity to argue their positions on the constitutionality of the privilege. No party will have been damaged by this pro se litigant's failure to clearly allege at trial a constitutional basis for the privilege or to notify the Attorney General of his constitutional arguments.
 III.
The trial court also should be given the opportunity to examine whether Dr. Tenbrunsel's reporting of the information Marks disclosed was mandatory or permissive. Alabama Code 1975, §26-14-3, titled "Mandatory reporting," mandates reporting by "mental health professionals . . . or any other person called upon to render aid or medical assistance to any child, when the child is known or suspected to be a victim of child abuse or neglect. . . ." Section 26-14-4, titled "Permissive reporting," provides: "In addition to those persons, firms, corporations and officials required by Section 26-14-3 to report child abuse and neglect, any person may make such a report if such person has reasonable cause to suspect that a child is being abused or neglected."
Dr. Tenbrunsel had a psychotherapist-patient relationship with Marks. He had never been "called upon to render aid or medical assistance" to either of the children who were the subjects of the abuse. His duty to report, if any, would therefore fall under § 26-14-4, "Permissive reporting," rather than § 26-14-3, "Mandatory reporting."
Although the immunity conferred by § 26-14-9 applies to "any person" making a report "under this chapter," and "this chapter" includes both the mandatory reporting statute, § 26-14-3, and the permissive reporting statute, § 26-14-4, the difference between mandatory reporting and permissive reporting may be significant. The immunity provision of § 26-14-9 contains an important limitation: it grants immunity only for "the making of a good faith report." The term "good faith" was added to § 26-14-9 by a 1998 amendment, and this Court has never construed the phrase "good faith" in the context of this statute. Cases that describe the immunity granted by this statute as "absolute" predate the 1998 "good faith" amendment; see Evans v. Waddell, 689 So.2d 23
(Ala. 1997). The most obvious example of bad-faith reporting might be an instance in which one knowingly files a false report of suspected child abuse for the purpose of harassing someone. But a court might reasonably conclude that a psychotherapist's promising a patient absolute confidentiality and then breaking that promise by making a child-abuse report in which *Page 1273 
the patient is named as the abuser constitutes bad faith. A court might also reasonably conclude that promising absolute confidentiality and then making a mandatory suspected-child-abuse report does not constitute bad faith, but that promising absolute confidentiality and then making a permissive suspected-child-abuse report does constitute bad faith.
 IV.
This leads to another issue the trial court should have the opportunity to consider on remand: Whether Dr. Tenbrunsel promised Marks absolute confidentiality, and, if so, whether the making of that promise coupled with the subsequent disclosure of information Marks thought would be confidential constituted actionable malpractice?
Marks claims Dr. Tenbrunsel promised that Marks's communications to him during therapy would be absolutely privileged. Marks claims to be well versed on child-abuse issues and on procedures used in psychotherapy, and he claims that he asked Dr. Tenbrunsel about the confidentiality of information Marks would disclose during their sessions and that he was promised absolute confidentiality. He further asserts that he would never have disclosed the child abuse if Dr. Tenbrunsel had promised anything less than absolute confidentiality. Dr. Tenbrunsel acknowledges that a conversation about confidentiality took place, but he denies that he promised Marks absolute confidentiality. At the very least, Marks has presented a set of facts on which he could prevail, making the dismissal inappropriate.
If Dr. Tenbrunsel promised absolute confidentiality, Marks may have a claim for malpractice. The malpractice could be (1) Dr. Tenbrunsel's making a promise of confidentiality that he knew or should have known he might not be able to keep; or (2) Dr. Tenbrunsel's having made a promise of confidentiality, subsequently breaking that promise; or (3) both. Breaking a promise of confidentiality is especially likely to constitute malpractice if the reporting was permissive under § 26-14-4
rather than mandatory under § 26-14-3.
Dr. Tenbrunsel and the other defendants cite Hall v. Van'sPhoto, Inc., 595 So.2d 1368 (Ala. 1992), as authority for the proposition that a breach of a promise of confidentiality is justified in cases involving the abuse of a child. In that case, Hall brought film of her nude three-year-old child to Van's Photo Shop and allegedly received a promise of confidentiality from the photo shop before she allowed it to develop the film. The photo shop developed the film, suspected child abuse, and forwarded the film to the FBI. This Court held that there was reasonable cause to suspect child abuse and to make the report, despite any promises of confidentiality.
Hall presents a far different situation from the case at hand. Unlike the psychotherapist-patient privilege, no photographer-customer privilege exists or has ever existed under the law of this or any other jurisdiction. Furthermore, psychotherapy is a counseling profession in a way that photographic development is not. One could therefore reasonably expect confidentiality with a psychotherapist that one could not expect from a photo shop.
The public interest in discovering and preventing child abuse and the individual's interest in protecting the confidentiality of privileged communications are both of vital importance. In a case like this, they may conflict. I believe the Court should reverse the trial court's judgment finding Dr. Tenbrunsel and Dr. Pope immune and remand the case for trial, not only to do justice for the persons involved, but also to reconcile these competing interests. *Page 1274 
 V.
I also cannot agree with the main opinion that Marks's claim against Dr. Pope and Alabama Psychological Services should have been dismissed. The very point on which Marks predicates liability on the part of Dr. Tenbrunsel also implies potential liability on the part of Dr. Pope and Alabama Psychological Services. According to Marks, after Marks disclosed his actions involving the two children to Dr. Tenbrunsel, the doctor consulted with Dr. Pope and then decided to file a child-abuse report. If Dr. Pope advised Dr. Tenbrunsel to report the abuse, she and Alabama Psychological Services might be subject to the same malpractice liability as is Dr. Tenbrunsel for reporting the child abuse. Again, Marks has presented facts upon which he could prevail at trial, making a dismissal inappropriate. I would not dismiss the claims against Dr. Pope and Alabama Psychological Services, at least until Marks has had the opportunity to conduct discovery and to determine what advice Dr. Pope gave Dr. Tenbrunsel.
For the above reasons, I would reverse the trial court's judgment and remand the case with instructions to the trial court to determine as issues of fact and law: (1) whether Dr. Tenbrunsel promised Marks absolute confidentiality; (2) if so, whether Dr. Tenbrunsel's breach of that promise is actionable; (3) whether Dr. Pope advised Dr. Tenbrunsel to make the child-abuse report; and, (4) if so, whether that advice constituted fraud and/or malpractice. Therefore, I must dissent.