**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 4, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 4, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re Petition for Recall of Commissioner Lisa Olsen | No. 104087-3<br><br>En Banc<br><br><br>Filed: December 4, 2025 |

WHITENER, J. – Irving Edersheim, a registered voter in Pacific County filed a recall petition against Pacific County Commissioner Lisa Olsen. The petition alleged two charges against Commissioner Olsen for violations of the executive session statutory exception in the Open Public Meetings Act of 1971 (OPMA). RCW 42.30.110. The superior court found both charges were factually and legally sufficient. We find both charges are factually and legally insufficient. We reverse.

### FACTUAL BACKGROUND

This recall petition stems from a contentious issue in Pacific County regarding the management of its county jail and the deaths of two jail inmates. In 2022 and 2024, two inmates died while in custody at the local jail in Pacific County.

Historically, the jail has been managed by the Pacific County sheriff. On December 26, 2024, at a public meeting, and after hearing public comments, the Board of Pacific County Commissioners unanimously voted to start the process of creating a "jail services department" to operate the local jail and to appoint a new director, who would report directly to the Board of Pacific County Commissioners. Clerk's Papers (CP) at 103, 110.

Voter Irving Edersheim, in the recall petition, alleged that Lisa Olsen, an elected member of the Board of Pacific County Commissioners, violated the OPMA by failing to have legal counsel present during executive sessions where litigation or potential litigation was discussed. He also alleged that Commissioner Olsen generally acted with disregard for public input and misrepresented the decision-making process behind her vote in favor of creating a jail services department that would take over management of the local county jail in Pacific County.

I.      Charge 1

Charge 1 reads, "Explicit violations of the Open Public Meetings Act for not having legal counsel present in Executive Sessions pursuant to RCW 42.30.110(1)(i) not open to the public on 6/11/24, 10/8/24, 6/25/24, 10/31/24 and only part of the time on 10/22/24." CP at 158.

This charge alleged that Commissioner Olsen violated the OPMA after attending executive sessions pursuant to RCW 42.30.110(1)(i) that were not open to the public and where legal counsel was absent. CP at 5-8. These violations allegedly occurred for the executive sessions meetings that occurred on June 11, June 25, October 8, October 22, and October 31, 2024. *Id*. Edersheim relies on county meeting minutes to establish his knowledge of when these meetings took place, who attended them, and what subjects were discussed. CP at 14-58.

The minutes indicate that five executive sessions were held on June 11, June 25, October 8, October 22, and October 31, 2024. CP at 14-28, 37-42, 45-52. The minutes show that these executive sessions were held to discuss "litigation or potential litigation." CP at 19-20, 26-27, 51-52. Edersheim argues that "the ballot synopsis approved by the Court supports the identification in the Petition of at least four meetings in which legal counsel was not present in violation of the OPMA." Resp't Edersheim's Br. at 23. Edersheim appears to implicitly concede that the recall petition should not have included the October 8, 2024 executive session meeting. The minutes indicate that legal counsel, Michael Rothman, was in attendance during this executive session. CP at 41.

The October 22, 2024 executive session meeting minutes indicate that legal counsel was in attendance. CP at 47. However, Edersheim disputes whether legal

3

counsel was in attendance during the entirety of the meeting. Edersheim argues that an audio recording of the meeting shows Rothman stated that he was "'going to have to step out'" due to a scheduling conflict. CP at 7. Commissioner Olsen does not dispute that the executive sessions meeting minutes for June 11, June 25, and October 31, 2024, indicate that executive sessions were held to discuss litigation or potential litigation, nor does she dispute that the attendee section of the minutes does not show legal counsel was in attendance.

In addition, as support for charge 1, Edersheim's recall petition included (1) an OPMA training certificate signed by Commissioner Olsen, (2) an OPMA training PowerPoint last revised by the Washington State Attorney General's Office in 2017, and (3) Commissioner Olsen's prewritten statements prepared before the December 26, 2024 public meeting. CP at 59-95.

II.     Charge 2

Charge 2 reads, "These violations were done with the intent to disregard public input, and misrepresent their decision-making process regarding the removal of the county jail from sheriff control. The recall petition asserts that commissioners held private meetings on the matter, failed to allow adequate public discussion, and falsely claimed the decision had not been made in advance despite presenting pre-written statements." CP at 158.

To support charge 2, Edersheim included three documents in the recall petition. The first document is Commissioner Olsen's prewritten statements. CP at 94-95. Commissioner Olsen's statement reads, "When you become an elected official, one of the things that you realize very quickly are that there are many details of events you become aware of and have to deal with that are not, nor should not be for public consumption." CP at 94. The second document is Commissioner David Tobin's prewritten statements. CP at 96-100. Commissioner Tobin is another member of the Board of Pacific County Commissioners. Commissioner Tobin's statement reads, "I have clearly heard the concern that this decision has been fast-tracked … and that it is being made to [sic] quickly. I will apologize to you for that … However, we **have** been talking about this for months." CP at 97. The third document is a memo from Commissioner Olsen addressed to the "Pacific County Jail Employees" regarding the board's decision to create a jail services department. CP at 110. In addition, for all three documents, Edersheim included screenshots of the Microsoft Word metadata information page. He alleged that the metadata shows the documents were either "created" or "last modified" on dates prior to the public meeting held on December 26, 2024. CP at 95, 100, 111.

On April 4, 2025, the superior court conducted a hearing to determine the sufficiency of the charges and the adequacy of the ballot synopsis. CP at 121-25;

RCW 29A.56.140. The court concluded that the charges were sufficient to show that Commissioner Olsen violated the OPMA. CP at 123-24.

ANALYSIS

In Washington, all elected officials except judges are subject to recall for malfeasance or misfeasance while in office or violating their oath of office. WASH. CONST. art. I, § 33; *see also* RCW 29A.56.110.

"Malfeasance," "misfeasance," and "violation of the oath of office" are defined as follows:

> (1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
> (a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
> (b) Additionally, "malfeasance" in office means the commission of an unlawful act;
> (2) "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

RCW 29A.56.110.

In the recall process, courts act as gatekeepers, and our role is "'to ensure that the recall process is not used to harass public officials by subjecting them to frivolous or unsubstantiated charges.'" *In re Recall of Riddle*, 189 Wn.2d 565, 570, 403 P.3d 849 (2017) (quoting *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.3d 1190 (2005)). As such, we do not review recall charges for their truthfulness. *In re Recall*

*of Wasson*, 149 Wn.2d 787, 792, 72 P.3d 170 (2003) (citing *Cole v. Webster*, 103 Wn.2d 280, 287-88, 692 P.2d 799 (1984)). Instead, it is the voters who determine "whether the charges are true and, if so, whether they in fact justify recalling the official." *In re Recall of Durkan*, 196 Wn.2d 652, 663, 476 P.3d 1042 (2020). Therefore, all factual allegations are taken as true. *Id*. (citing *In re Recall of Boldt*, 187 Wn.2d 542, 549, 386 P.3d 1104 (2017)).

"'The sufficiency of a recall petition is reviewed de novo.'" *Boldt*, 187 Wn.2d at 549 (quoting *Wasson*, 149 Wn.2d at 791). "Recall petitions must be both legally and factually sufficient." *Id*. at 548. Factual sufficiency is satisfied when the alleged facts, taken as a whole, "'identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office.'" *Id*. (quoting *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)). If there is an allegation that the "official violated the law, the facts must show the official intended to do so." *In re Recall of Inslee*, 194 Wn.2d 563, 568, 451 P.3d 305 (2019) (citing *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990)). The charge must "state the act or acts complained of in concise language[ and] give a detailed description including the approximate date, location, and nature of each act complained of." RCW 29A.56.110. The individual making the charge must have

knowledge of the alleged facts on which the stated grounds for recall are based. *Chandler*, 103 Wn.2d at 274. This knowledge need not be firsthand, but it must be "more than simply a belief that the charges are true." *In re Recall of Reed*, 156 Wn.2d 53, 58, 124 P.3d 279 (2005) (citing *In re Recall of Lee*, 122 Wn.2d 613, 617, 859 P.2d 1244 (1993)).

Legal sufficiency is satisfied when a petition "'state[s] with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office.'" *Boldt*, 187 Wn.2d at 549 (alteration in original) (quoting *Chandler*, 103 Wn.2d at 274). If a recall charge is based on acts taken pursuant to an official's discretionary authority, the petition must show that "the execution of that discretion" was "done 'in a manifestly unreasonable manner.'" *Inslee*, 194 Wn.2d at 572 (internal quotation marks omitted) (quoting *In re Recall of Bolt*, 177 Wn.2d 168, 174, 298 P.3d 710 (2013)). Additionally, "'[a] legally cognizable justification for an official's conduct renders a recall charge insufficient.'" *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 766, 10 P.3d 1034 (2000) (quoting *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 264, 961 P.2d 343 (1998)).

I.      Charge 1 is factually and legally insufficient

Under RCW 42.30.110(1)(i), a governing body may hold an executive session during a regular to special meeting "[t]o discuss with legal counsel … litigation or potential litigation."[1] The attorney-client privilege exception is available when the relevant government actor (1) discusses with counsel (2) actual or potential litigation (3) where public knowledge of the discussion is likely to cause adverse legal or financial consequence. *In re Recall of Lakewood City Council Members*, 144 Wn.2d 583, 30 P.3d 474 (2001). The plain language of the statutory exception clearly indicates that presence of legal counsel is necessary for this exception to apply.

The petitioner must have some form of knowledge of the facts underlying the charges, but there is no requirement that the knowledge be firsthand. *Lee*, 122 Wn.2d at 617. We have made clear that legal counsel must be present in order for the governing body to invoke the attorney-client privilege statutory exception to the OPMA. *Lakewood*, 144 Wn.2d 583. An executive session that does not have legal counsel present therefore likely exceeds the scope of the exception. In *In re Recall of DeBruyn*, we found a lack of factual sufficiency where "[n]o minutes, recording,

---

[1] There is no dispute that the executive sessions at issue were considered "meetings" subject to the OPMA, requiring them to be open to the public unless one of the statutory exceptions was satisfied.

or statements of participants of what occurred during the 5-minute executive session [were] provided." 112 Wn.2d 924, 930, 774 P.2d 1196 (1989).

Petitioner Edersheim's recall petition alleged that Olsen violated the OPMA by holding executive sessions during regular and special meetings on June 11, June 25, October 8, October 22 and October 31, 2024 for the purpose of discussing litigation or potential litigation without legal counsel present. His knowledge of these meetings comes from the meeting minutes. The meeting minutes show who was in attendance, the time stamp of when the sessions began and ended, the statutory exception used to invoke the executive session, and whether the commission expected to take further action following the session.

Commissioner Olsen does not dispute the allegations that these executive sessions occurred. She does not dispute who attended the executive sessions, what statutory exemption was invoked to hold the executive sessions, or that she is required to have legal counsel present when invoking the attorney-client privilege exception to the OPMA. Instead, Commissioner Olsen argues that Edersheim cannot show he has personal knowledge of the facts underlying the alleged violations because the meeting minutes contradict his own allegations about the attendance of legal counsel on the October 8 and October 22, 2024 meetings. Commissioner Olsen argues that the meeting minutes are unreliable. She argues that the county clerk who

10

prepares the meeting minutes does not attend the executive sessions and is therefore unaware of who is in attendance. Moreover, the minutes, she argues, are often created prior to the meetings and the minutes are not always updated to reflect changes to the agenda. As a result, Commissioner Olsen argues the minutes provide insufficient evidence to support Edersheim's allegation that she violated the OPMA. She also argues that Edersheim fails to provide evidence that she acted with intent to violate the OPMA.

The factual and legal sufficiency for each meeting is discussed below.

a.  October 8, 2024 executive session meeting

Edersheim's only evidence regarding the October 8, 2024 meeting is the meeting minutes. These minutes indicate that legal counsel, Michael Rothman, was present, but the recall petition and the ballot synopsis allege that legal counsel was absent during this meeting. CP at 41, 125. Commissioner Olsen argues that this contradiction renders the meeting minutes insufficient evidence to establish Edersheim's personal knowledge of the alleged OPMA violations. We agree.

Petitioner Edersheim fails to provide prima facie evidence in charge 1 of the recall petition that identifies conduct or behavior that indicates Commissioner Olsen held an executive session meeting on October 8, 2024 in violation of RCW 42.30.110(1)(i). *Inslee*, 194 Wn.2d 563 (holding that factual sufficiency requires

finding facts that establish a prima facie case of misfeasance, malfeasance, or violation of the oath of office).  He also fails to state with specificity substantial conduct amounting to misfeasance, malfeasance, or violation of the oath of office.

The allegations in support of charge 1 for the October 8, 2024 executive session meeting are factually and legally insufficient.

b.  October 22, 2024 executive session meeting

A recall "'charge, taken as a whole ..., must be specific enough to give the elected official meaningful notice of the particular conduct challenged and why it is grounds for recall.'" *In re Recall of Pepper*, 189 Wn.2d 546, 553, 403 P.3d 839 (2017) (alteration in original) (quoting *Boldt*, 187 Wn.2d at 549).

Here, Edersheim relies on the October 22, 2024 executive session meeting minutes to establish a prima facie case that Commissioner Olsen violated RCW 42.30.110(1)(i). However, the minutes show that legal counsel, Michael Rothman, was in attendance during this meeting to discuss the subject of litigation or potential litigation under RCW 43.30.110(1)(i). CP at 47. Edersheim disputes the minutes entry showing legal counsel's attendance. He alleged that an audio recording of the meeting shows Rothman announcing that he was "going to have to step out." CP at 7. The audio recording is the only evidence Edersheim avers in the recall petition, and he failed to include the audio recording in the recall petition.

Edersheim fails to provide prima facie evidence that identifies conduct or behavior regarding the October 22, 2024 meeting that shows Commissioner Olsen held a meeting in violation of RCW 42.30.110(1)(i). *Inslee*, 194 Wn.2d 563. He also fails to state with specificity substantial conduct amounting to misfeasance, malfeasance, or violation of the oath of office. The allegations in support of charge 1 for the October 22, 2024 executive session meeting are factually and legally insufficient.

c.  The June 11, June 25, and October 31, 2024 executive session meetings

A factually sufficient recall petition must "provide a detailed description that includes the date, location, and nature of each allegation." *Wasson*, 149 Wn.2d at 791.

Edersheim relies on the June 11, June 25, and October 31, 2024 executive session meeting minutes to support his allegation that Commissioner Olsen violated RCW 42.30.110(1)(i). Each meeting's minutes provide sufficiently detailed descriptions of the alleged violations. The minutes indicate the agenda for those sessions, which included the subject of "litigation or potential litigation." CP at 19-20, 26-27, 51-52. The attendees sections of the meeting minutes do not list the name of legal counsel, and they show that Commissioner Olsen was in attendance. *Id*. The

minutes indicate the start and stop time of the executive session meetings, and the minutes indicate whether any action was taken pursuant to the meetings. *Id.*

Thus, charge 1 of the recall petition gives sufficiently detailed descriptions of the nature of the violative acts that occurred on June 11, June 25, and October 31, 2024 executive session meetings.

Commissioner Olsen counters that the meeting minutes are insufficient to support finding an OPMA violation because the minutes contradict Edersheim's allegations regarding the October 8 and October 22, 2024 executive session meetings. It is true that Edersheim's claim that RCW 42.30.110(1)(i) was violated on October 8 and October 22 are contradicted by the meeting minutes, but Edersheim does not have to show that he had actual or firsthand knowledge that legal counsel was absent or present during these meetings. *Lee*, 122 Wn.2d at 616-17 (holding that a petitioner does not have to have actual knowledge of the facts underlying the charge, nor does he need firsthand knowledge). As a result, his failure to do so does not render the June 11, June 25, and October 31 executive session meeting minutes insufficient evidence.

However, when a petition charges an official with violating the OPMA, the petitioners must have knowledge of facts indicating an intent to violate the act. *In re Recall of Anderson*, 131 Wn.2d 92, 95, 929 P.2d 410 (1997); *Inslee*, 194 Wn.2d at

568). While some inferences are permissible in a recall petition, on the whole, the facts must indicate an intention to violate the law. *In re Recall of Telford*, 166 Wn.2d 148, 158, 206 P.3d 1248 (2009); *see also In re Recall of Carkeek*, 156 Wn.2d 469, 128 P.3d 1231 (2006).

RCW 42.30.110(1)(i) requires that a governing body that holds an executive session during a regular or special meeting for the purposes of discussing litigation or potential litigation must do so with legal counsel present. The record indicates that Commissioner Olsen attended such meetings without legal counsel present. The mere fact that Commissioner Olsen attended meetings under subsection .110(1)(i) privileges without legal counsel does not constitute malfeasance, misfeasance, or violation of her oath of office. RCW 29A.56.110. We have made clear that legal counsel must be present in order for the governing body to invoke the attorney-client privilege statutory exception to the OPMA. *Lakewood*, 144 Wn.2d 583. *Lakewood* held only that certain requirements must be met in order for the attorney-client privilege exception to apply. *Id*. *Lakewood* did not address whether a governing body member's mere attendance in a meeting under the attorney-client privilege exception without legal counsel present amounts to malfeasance, misfeasance, or violation of oath of office.

To support his allegations of Commissioner Olsen's intent to violate the act, Edersheim attached two exhibits. The first exhibit is an OPMA training certificate issued to Commissioner Olsen and OPMA training materials prepared by the state attorney general's office, and the second exhibit is Commissioner Olsen's prewritten statements for the December 26, 2024 public meeting. CP at 52-95. According to Edersheim, this evidence indicates Commissioner Olsen "had knowledge of this requirement, yet disregarded it." CP at 8. Petitioner Edersheim has shown that Commissioner Olsen attended training about the OPMA where the requirements of RCW 42.30.110(1)(i) were discussed; however, this evidence shows only that Commissioner Olsen received training on the OPMA and on the requirements of RCW 42.30.110(1)(i). This evidence, however, does not show that she *intended* to violate the act on the three dates the meetings were held. *Estey v. Dempsey*, 104 Wn.2d 597, 605, 707 P.2d 1338 (1985) (holding that "[i]n a recall case, recall petitioners should at least have knowledge of facts which indicate an *intent* to commit an unlawful act"). Here, Edersheim's recall petition is also factually insufficient because he has not provided evidence that Commissioner Olsen acted with intent to violate the OPMA and specifically RCW 42.30.110(1)(i).

Charge 1 is factually and legally insufficient as to the executive session meetings held on June 11, June 25, and October 31, 2024.

16

II.    Charge 2 is factually and legally insufficient

A recall charge must "give a detailed description including the approximate date, location, and nature of each act complained of." RCW 29A.56.110. The facts supporting each charge must be "stated in concise language and provide a detailed description that includes the date, location and nature of each allegation." *Wasson*, 149 Wn.2d at 791. Edersheim's recall petition allegations lack the specificity required. He states that Commissioner Olsen violated the OPMA by undermining "public deliberation and transparency" due to a "lack of any prior public discussion" and for engaging in discussions about the jail matter "outside the public's view." CP at 10.

His allegations supporting charge 2 of the recall petition are derivative of charge 1. In charge 2 he alleged a series of "implicit violations of the OPMA." CP at 8 (boldface and capitalization omitted). The factual basis of charge 2 includes several decisions taken by Commissioner Olsen prior to the December 26, 2024 public meeting. The petition alleged that Commissioner Olsen "read from prepared statements," which included the statement "'[w]hen you become an elected official one of the things that you realize very quickly are that there are many details of events that you become aware of and have to deal with and make decisions on that are not nor should be for public consumption.'" *Id*. The petition also alleged that

17

Commissioner Olsen's statements show that the board held "*at least* one meeting about the [j]ail matter" and that decisions were made by the board that "'[were] not […] for public consumption.'" *Id.* (second and third alterations in original). Petitioner Edersheim points to meeting minutes produced over the last several months that did not contain any agenda item regarding "Pacific County Jail Services" and alleged this must indicate that a private meeting about the matter occurred. CP at 14-58. Also, he points to the metadata of two documents to support the allegation that Commissioner Olsen violated the OPMA by disallowing public input: (1) Commissioner Olsen's prepared statements and (2) the resolution passed by the board. CP at 95, 111. He argues that Commissioner Olsen's decision at the December 26, 2024 meeting was "premeditated" and "finalized" before the public meeting because both documents were created prior to that meeting date. CP at 10.

Charge 2 in the recall petition lacks the requisite factual detail. Petitioner Edersheim fails to identify the approximate date, location, and nature of the alleged private meetings that occurred in violation of the OPMA. He fails to provide the requisite detail and precision necessary to determine the nature of the act complained of. Charge 2 is factually insufficient.

Charge 2 is also legally insufficient. A charge must also sufficiently "specify why [the challenged] acts constitute misfeasance, malfeasance or violation of the

18

oath of office as defined in RCW 29.82.010." *Teaford v. Howard*, 104 Wn.2d 580, 587, 707 P.2d 1327 (1985). Each charge must identify the "standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful." *In re Recall of Ackerson*, 143 Wn.2d 366, 377, 20 P.3d 930 (2001).

Petitioner Edersheim fails to state which law, standard, or rule for charge 2 renders Commissioner Olsen's actions unlawful. The recall petition simply states that the conduct at issue constitutes an "implicit violation of the OPMA." CP at 8 (boldface and capitalization omitted). It lacks the required specificity. Violations of the OPMA stem from statute and case law, neither of which he references. The OPMA also does not contain "implicit violations" as Edersheim describes.

Charge 2 is factually and legally insufficient.

CONCLUSION

We reverse the superior court.

_____
Whitener, J.

WE CONCUR.

_____
Stephens, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Yu, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
González, J.

_____
Mungia, J.