[Nos. 63270-7; 63273-1.  En Banc.  January 11, 1996.]

*In the Matter of the Petition for Recall of* AARON
BEASLEY, *Appellant, and* CITIZENS FOR A QUALITY
SCHOOL BOARD, ET AL., *Respondents.*

*In the Matter of the Petition for Recall of* ROBERT
SANDOVAL, *Appellant, and* CITIZENS FOR A QUALITY
SCHOOL BOARD, ET AL., *Respondents.*

420

*Putney Mazzola Law Offices*, by *David H. Putney*, for appellant Beasley.

*William A. Coats* and *Jamie L. Siegel* of *Vandeberg Johnson & Gandara,* for appellant Sandoval.

*Evans & Kerr, P.S.*, by *Leland B. Kerr*, for respondents.

DOLLIVER, J. — Pasco School Board members Robert Sandoval and Aaron Beasley appeal from a judgment find-

ing the charges in two recall petitions to be legally and factually sufficient for submission to voters. We reverse.

On August 24, 1995, Dennis Duncan and Robert Silvey, individually and on behalf of an organization called Citizens for a Quality School Board (respondents), filed identical petitions to recall appellants Sandoval and Beasley. Each petition contains two charges. The first charge alleges that appellants conspired with former school board member Brenda High to compel Superintendent George Murdock to accept a modification of his employment contract or, failing that, to notify Murdock that his contract would not be extended, all in violation of the Open Public Meetings Act of 1971, RCW 42.30. Respondents assert in the petitions that, following "several prior conversations" between appellants, High, and Kenneth Rice (the attorney for the board and the school district), appellants met with Rice to "prepare modifications of the Superintendents [sic] contract modifying the extension provision." At that time, respondents allege, Rice contacted High "to confirm they were in accord," and High said that they were.

According to the recall petitions, on the morning of February 9, 1995, High and appellant Beasley met with Rice to sign the contract modification and directed him to obtain appellant Sandoval's signature as well. The next day, Murdock allegedly "was presented with the contract modifications including the signatures of Ms. High and Mr. Beasley and advised that Mr. Sandoval had approved and would be signing the contract or, that in the alternative this constituted written notification of the Boards [sic] intent not to extend the Superintendent's present contract which would expire on June 30, 1997." Murdock purportedly refused to sign the contract modification.

Next, according to the recall petitions, Sandoval met with Rice to sign the contract modification. Respondents assert that the contract modification containing three signatures (a majority of the school board) was again pre-

sented to Murdock, "constituting a written notice of intent not to extend his existing contract."

Respondents allege that "[a]t no time was the action of either modifying the Superintendents [sic] contract or giving notice of intent not to extend the Superintendents [sic] contract on any meeting agenda or the subject of any school board meeting." Respondents claim that this "action" violated the Open Public Meetings Act of 1971 as well as school district policies.

Respondents' second charge alleges that appellants, again in concert with High, voted on June 22, 1995 "to institute an undefined investigation of 'the operation of Pasco School District' authorizing expenditure of $30,000 in public funds." According to the recall petitions, Beasley, as board president, was given "full authority to select legal counsel and . . . sole discretion to call off the investigation if he wanted." The action also purportedly gave Beasley "the authority to grant 'whistle blower status' as needed." This action, respondents assert, was an "intended retaliatory action against other members of the school Board and members of the administration with the intent to intimidate and harass them."

As further explanation of this charge, respondents allege in their petitions that appellants and High rescheduled the June 1995 board meeting so that it would take place before "a Court determination on the forfeiture of Brenda High's office as a member of the School Board." Respondents say that, prior to that meeting, articles and editorials had appeared in the local newspaper "reporting that a recall committee was investigating potential wrongdoing by High, Beasley and Sandoval for the purposes of a recall election." Respondents allege that, after High unsuccessfully moved to have pay raises for school administrators put to a vote of the general electorate, she moved to authorize Beasley to "hire independent legal counsel to conduct an investigation in the operation of this School District and authorized $30,000 of District funds to be committed to the investigation." The scope of

the investigation was allegedly left to Beasley's "unfettered discretion . . ., including the investigation of Mr. Gregson and Mr. Silvey, other Board members not subject to the recall effort, as well as the Superintendnet [sic] and other key administrators." (The "Mr. Silvey" who is a member of the board is not respondent Robert Silvey.)

Respondents say that, when Sandoval was questioned about the need for the investigation, he responded that "things were still going on with the recall committee and they were investigating him, by implication, the others should likewise have a taste of the same medicine." Beasley allegedly "likewise responded since the morning paper clearly stated that they are still being investigated, Board members Bob Gregson and Richard Silvey deserved just as much scrutiny." According to respondents, the motion passed.

Respondents then list, in quotation marks, comments allegedly made "by these three Board members to administrators" which made it "apparent that the motivation and intent for investigation is no more than vendictive [sic] retribution." These comments include, " 'we aren't going to buy out yours and Murdock's contracts, we will just make your life a living hell;' " " '[w]e ought to just fire the damn bunch (administrators) and start over again;' " " '[w]e ought to clean house in this office (central office) from one end to the other;' " and " '[m]y only satisfaction from serving on this Board is harassing and intimidating the administration.' "

Respondents claim that the motion to investigate other board members was "unlawful and beyond the scope of authority granted by RCW 28A.320.015 and Pasco School Policy 1711;" that a limitation in the motion that the investigating attorney be from outside the Tri-Cities area "is in violation of both statutory and constitutional protection and is unlawful;" and that the granting of "whistle blower status" is "not authorized and [is] in fact contrary to the terms of RCW 42.41 'Local Government Whistle Blower Protection Act' [and] therefore [is] unlawful." They

further assert that the actions of appellants in expending public funds "to further a private vendetta" violated their oaths of office and constitutes misfeasance and malfeasance.

Pursuant to RCW 29.82.021, the Franklin County prosecutor prepared a ballot synopsis and filed a petition in superior court to determine the sufficiency of the charges and the synopsis. At a hearing on September 11, 1995, the court examined recall proponents Silvey and Duncan, as well as Citizens for a Quality School Board member Jean Martin, on the basis of their knowledge of the facts alleged in the petitions. The court determined that the charges were legally and factually sufficient for submission to the voters.

As approved by the court, the ballot synopsis asks first whether appellants should be recalled for "conspiring" with High "to compel modification of the superintendents [sic] contract and failing to achieve the modification gave notice not to extend the superintendents [sic] contract without holding a public meeting in violation of law." Second, the synopsis asks whether appellants should be recalled for "initiating a retaliatory investigation of other school board members and employees intended to intimidate and harass them."

We review recall petitions using the same criteria as the superior court. *In re Shipman*, 125 Wn.2d 683, 684, 886 P.2d 1127 (1995). The fundamental requirement is that the charges be both factually and legally sufficient. *Id.* at 684. To be factually sufficient, a charge must

> state the act or acts complained of in concise language, give a detailed description including the approximate date, location, and nature of each act complained of, . . . and be verified under oath that [the petitioners] believe the charge or charges to be true and have knowledge of the alleged facts upon which the stated grounds for recall are based.

RCW 29.82.010. The purpose of the factual sufficiency requirement "is to ensure that charges, 'although ade-

quate on their face, do not constitute grounds for recall unless supported by identifiable facts.' " *In re Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990) (quoting *Teaford v. Howard*, 104 Wn.2d 580, 585, 707 P.2d 1327 (1985)).

This court has thoroughly explained the requirement of factual sufficiency in recent decisions:

> "The charges must be made with 'sufficient precision and detail to enable the electorate and the challenged official to make informed decisions in the recall process.' *Jenkins v. Stables*, 110 Wn.2d 305, 307, 751 P.2d 1187 (1988). Although charges may contain some conclusions, they must state sufficient facts to 'identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office.' *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984). 'Misfeasance' and 'malfeasance' both mean 'any wrongful conduct that affects, interrupts, or interferes with the performance of official duty.' RCW 29.82.010(1). 'Misfeasance' also includes the performance of an official duty in an 'improper manner', and 'malfeasance' includes the commission of an unlawful act. RCW 29.82.010(1)(a); *In re Hurley*, 120 Wn.2d 378, 380, 841 P.2d 756 (1992). 'Violation of the oath of office' means the 'wilful neglect or failure by an elective public officer to perform faithfully a duty imposed by law.' RCW 29.82.010(2).
>
> A charge must also sufficiently 'specify why [the challenged] acts constitute misfeasance, malfeasance or violation of the oath of office as defined in RCW 29.82.010.' *Teaford v. Howard*, [104 Wn.2d at 587]. Furthermore, 'where the petition charges the official with violating the law, the petitioners must at least have knowledge of facts which indicate an intent to commit an unlawful act.' *In re Wade, supra* at 549. Although the recall statutes do not require firsthand knowledge of the facts underlying the charges, the petitioners must have some form of knowledge of the facts upon which the charges are based rather than simply a belief that the charges are true. *In re Zufelt*, 112 Wn.2d 906, 912, 774 P.2d 1223 (1989)."

*Jewett v. Hawkins*, 123 Wn.2d 446, 447-48, 868 P.2d 146

(1994) (quoting *In re Lee*, 122 Wn.2d 613, 616-17, 859 P.2d 1244 (1993)); *see also In re Shipman*, 125 Wn.2d at 684-85.

■ "Legal sufficiency" means that "the charge must state with specificity 'substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office.'" *Shipman*, 125 Wn.2d at 685 (quoting *In re Wade*, 115 Wn.2d at 549).

The first charge alleges that appellants violated the Open Public Meetings Act of 1971. The intent of the act is that "deliberations be conducted openly." RCW 42.30.010. To that end, all "meetings" of the governing body of a public agency must be open and public. RCW 42.30.030. "Meetings" means meetings where "action" is taken. RCW 42.30.020(4). "Action" means "the transaction of official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions." RCW 42.30.020(3). Any member of a governing body who attends a meeting where action is taken in violation of the act, "with knowledge of the fact that the meeting is in violation thereof," is subject to a civil penalty of $100. RCW 42.30.120(1). Also, any action taken in violation of the act is null and void. RCW 42.30.060.

■ It may be assumed arguendo that discussions between a majority of the members of the school board regarding modification or extension of the superintendent's contract would constitute "meetings" subject to the Open Public Meetings Act of 1971. Nonetheless, the recall petitions state no facts, other than conclusory allegations that appellants "conspired" with one another, showing that appellants either knew that they were violating the Open Public Meetings Act of 1971 or that they intended to violate the act. *See In re Roberts*, 115 Wn.2d 551, 554, 799 P.2d 734 (1990) (no basis for recall when no facts alleged indicating an intent to violate Open Public Meetings Act of 1971). The allegations on their face show that the contract modifications were prepared with the advice and

assistance of the board's and school district's attorney, and when completed they were presented to the superintendent for his consideration. Respondents fail to show that appellants attempted to conceal or otherwise keep secret what they were doing. Indeed, it is undisputed that the board formally exercised its option not to extend the superintendent's contract at an open meeting on February 28, 1995. This fact is reflected in documents appellants submitted to the trial court. The parties dispute whether the trial court admitted or considered these documents. The record is unclear on this point, but it does appear that the trial court confined itself to the facts stated in the petitions. It is nonetheless proper in a recall case to consider documents like the ones appellants submitted. They are considered, not for evaluating the truth of the charges, but for the purpose of determining whether there is any factual basis for the charges. *See, e.g., In re Wade,* 115 Wn.2d at 550-51 (this court considered affidavits submitted by school superintendent's selection team in determining whether factual basis existed for charges against board members of unlawful employment discrimination); *see also In re DeBruyn,* 112 Wn.2d 924, 930, 774 P.2d 1196 (1989) (no basis for allegations as to what occurred at a meeting when no minutes, recording, or statements of participants as to what occurred were provided). It also appears this matter was openly discussed at a meeting on February 21.

The basis of respondents' knowledge of a number of the factual allegations is also insufficient. It is not clear, for instance, that respondents have any knowledge that appellants ever met together with High so as to constitute a majority of the board. *See In re Roberts,* 115 Wn.2d at 554 (no violation of Open Public Meetings Act of 1971 if fewer than a majority meet together on any one occasion). The first definite allegation of a "meeting" refers to the February 3 meeting with attorney Rice, which only appellants attended. Respondents assert that, before that meeting, there were "several prior conversations between Beasley, Sandoval and High concerning the Superintendents [sic]

contract." As the basis for their knowledge of these conversations, however, respondents, at the hearing before the superior court, made only vague references to attorney Rice's billings. Respondent Duncan, in fact, said that the February 3 meeting "was the first one" and that before that date there was only an "inquiry" on December 5, 1994. Respondent Silvey could not say definitely that appellants and High ever met together but said only that he "thought" Rice's billings would show that meetings took place with Rice "either individually or collectively."

The recall petitions also fail to show any clear basis for respondents' allegation that, when Beasley and High signed the contract modification on February 9, 1995, Rice "was directed to obtain Mr. Sandoval's signature as well." At the superior court hearing, Duncan was "unsure" of the source of that allegation, while Silvey said that "all [he had] to go on [was] the information that Mr. Murdock shared with [him] and he didn't give specifics as to who gave the directive to go on for the third signature."

Respondents further allege that, when Rice first presented the proposed contract modification to Murdock, he advised Murdock that, if he did not sign the modification, it would constitute written notification of the board's intent not to extend the present contract. Respondents have no factual basis for this allegation. Silvey acknowledged that no one said the proposed modification constituted notice, but that he "dug that up" from legal research and that, based on that research, the modification proposal "in [his] eyes . . . constitute[d] some form of written notice." Thus, the statement is not one of fact but is a legal conclusion.

The second charge is also deficient in that it is conjectural and fails to provide sufficient detail to enable the electorate to make an informed decision. On its face, the proposal that appellants and High approved was for an independent investigation directed at the entire school district and conducted by outside counsel. Without some statement of the entire context in which the investigation

was proposed and approved, it is not apparent how it could be used as an instrument of intimidation, nor can it be said there was no legitimate justification for it. *See Cole v. Webster*, 103 Wn.2d 280, 284-85, 692 P.2d 799 (1984) (discretionary act not basis for recall unless it is shown discretion was exercised in manifestly unreasonable manner or on untenable grounds).

Respondents charge that Sandoval said "things were still going on with the recall committee and they were investigating him, by implication, the others should likewise have a taste of the same medicine." The recall petitions do not indicate whether Sandoval actually said that others should "have a taste of the same medicine" or, rather, whether respondents inferred that intent. The statement attributed to Beasley—that the other board members "deserved just as much scrutiny"—is again ambiguous without a more complete statement of the context in which it was made. Beasley may have legitimately believed that the entire district needed to be investigated. As to neither of the statements quoted above did respondents state the basis of their knowledge. They provided no copy of the meeting minutes showing what actually transpired, nor did they purport to base their knowledge on their own observations or on what someone else told them. In the absence of more complete information about what occurred at the meeting, the facts alleged in the recall petitions do not make a clear, prima facie showing of misfeasance, malfeasance, or violation of the oath of office.

With regard to the several comments quoted in the second charge, it should be observed, first, that the recall petitions do not attribute them specifically to either of the appellants, but say only that they were "made by these three Board members to administrators," the "three" apparently being appellants and High. At the superior court hearing, Silvey said that Beasley made two of the comments, but he did not say who made the others. Silvey testified that he obtained the comments from a newspaper

article, and that their ultimate source was Superintendent Murdock, but he did not reveal the source of Murdock's knowledge. Moreover, neither the petitions nor the testimony reveal to whom the comments were made, when they were made, the context in which they were made, or how they related to the decision to approve an independent investigation. To conclude from these comments that appellants approved an investigation for the purpose of vengeance or intimidation would be conjectural.

Respondents liken this case to *In re Lee*, 122 Wn.2d 613, where we found sufficient a charge that a mayor threatened to fire police officers if they gave her traffic citations. That charge, however, was made by the very persons to whom the mayor allegedly made the threats, and on its face it clearly showed misconduct. Here, by contrast, the voter cannot conclude without more information, or without engaging in speculation, that appellants approved an investigation in order to intimidate and harass school officials. The allegation of intent to intimidate is not an observed fact but is respondents' conclusion.

The second charge also includes a number of statements which are legally insufficient. Respondents assert, for instance, that the investigation is unlawful and beyond the scope of the board's authority, but they do not explain why. Also, respondents fail to explain how the selection of an independent investigator from outside the Tri-Cities area violates "both statutory and constitutional protection," or how conferring the authority to grant "whistle blower status" is unlawful.

The charges in the petitions are factually and legally insufficient for submission to voters in a recall election. The superior court's order finding the charges sufficient is reversed.

DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and TALMADGE, JJ., concur.