

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 1 2 2017

CHIEF JUSTICE

This opinion was filed for record
at 8:00am on Jan 12, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Recall of | ) | No. 93522-0 |
| MARC BOLDT,<br>Clark County Councilor, | ) | |
| JEANNE STEWART,<br>Clark County Councilor, | ) | En Banc |
| JULIE OLSON,<br>Clark County Councilor. | ) | Filed    JAN 1 2 2017 |

GONZÁLEZ, J. — Clark County Councilor Thomas Mielke filed recall charges essentially alleging that three fellow council members improperly held a vote in executive session, improperly designated *The Columbian* as the newspaper of record, and did not prevent the county executive from dissolving a county department. The superior court judge dismissed the charges as legally and factually insufficient, which Mielke appealed. We affirm the trial court.

BACKGROUND

Clark County's Board of County Councilors (Board) operates under a "home rule charter." A home rule charter is a municipality's organizational plan, analogous to a constitution, drawn by the local government itself and adopted by popular vote. BLACK'S LAW DICTIONARY 284 (10th ed. 2014). In 2014, Clark County voters increased the number of the Board from three to five members. Under the charter, the Board is the legislative body and the county manager the executive. CLARK COUNTY CHARTER §§ 1.5, 2.1, 3.1. The manager has authority to supervise all administrative departments established by the charter or created by the Board, and to execute and enforce all ordinances. *Id.* § 3.2.

The Board adopted a budget in 2015 that included funding for a county Department of Environmental Services. Former Senator Don Benton served as its director. In May 2016, County Manager Mark McCauley "reorganize[d]" the Department, eliminating administrative positions, including Benton's, and reassigning the services to other county departments. Clerk's Papers (CP) at 520. According to McCauley, he based this decision on his authority alone as manager.

In 2016, Councilors Marc Boldt and Julie Olson were elected to the Board, joining Councilors Jeanne Stewart, David Madore, and Thomas Mielke. Tensions rose quickly between councilor members. The councilors often disagreed, dividing the Board into two factions: Boldt, Olson, and Stewart against Madore and Mielke.

*E.g.*, CP at 193-95, 11, 24, 38 (Mielke characterized Boldt, Olson, and Stewart as Madore's "political rivals"). Madore eventually became suspicious of Deputy County Prosecutors Chris Horne and Christine Cook and Planning Director Oliver Orjiako, accusing them of providing false information to the Board regarding the county's comprehensive plan update as required by the Growth Management Act, chapter 36.70A RCW. Madore created a document purportedly showing "inaccuracies of their testimony and posted it to the County's website." Br. of Appellant at 2 (citing CP at 129-30).

On March 1, 2016, Horne spoke about Madore's concerns and asked for guidance from the Board about whether an independent investigation was needed. Boldt, Olson, and Stewart stated that an investigation was not necessary, while Madore endorsed proceeding with an investigation. On March 2, 2016, a union for county employees threatened to file a grievance against Madore's "defamatory" public allegations naming Horne, Cook, and Orjiako. CP at 131-32.[1] On March 9, 2016, the Board met again, Horne provided additional background on an independent investigation, and the Board discussed "moving forward" with it. CP at 406.

---

[1] Madore accused Clark County staff of misfeasance at public meetings, in Facebook postings, in e-mails, in an op-ed article, and in an April 5, 2016 Clark County Focus television interview. CP at 235.

On March 15, 2016, Orjiako submitted a complaint, alleging Madore created a hostile workplace, to Clark County's director of human resources. In light of the Board's discussions, McCauley decided on his own to move forward with an investigation. McCauley directed his staff to locate an independent investigator to look into the allegations made by and against Madore. While the recruitment process was unclear, on March 19, 2016, attorney Rebecca Dean sent an engagement letter to the county, agreeing to begin an investigation. McCauley's declaration states that his staff proposed Dean's scope of work and he did not discuss it with the Board based on his "past practice regarding contracts for investigations of county employees." CP at 519. McCauley executed the contract "based on [his] authority as County Manager under the Clark County Home Rule Charter and related rules." *Id.* The Dean contract was not posted on the county's website.

The Board returned to conducting county business despite the allegations from Madore and county staff. On April 5, 2016, the Board considered bids for the county's newspaper of record. Four newspapers submitted bids. The county purchasing manager presented a report comparing the bids and advised the Board that the previous newspaper of record, *The Reflector*, had "compromised the County's ability to meet publishing deadlines and scheduled changes." CP at 443. The purchasing manager also stated that *The Reflector*, a weekly newspaper, would

4

require duplicate postings in *The Columbian*, a daily paper, concluding that *The Reflector* would ultimately be more expensive in total publishing costs. Boldt, Olson, and Stewart voted for *The Columbian*; Mielke and Madore voted for *The Reflector*.

Meanwhile, at an April 20, 2016 board meeting, McCauley explained why "he believed that he had unanimous support from the Board to proceed with an investigation of Councilor Madore's allegations" and, because the contract involved "investigations of one of the Board members," why "he decided that it was not appropriate" to post the Dean contract on the website. Resp'ts' Br. at 8 (citing CP at 189-90). Interestingly, Mielke seems to confirm that the Board had agreed to pursue an investigation, but believed there had been no agreement regarding its scope. CP at 194 ("I thought we would agree to hire someone, but we hadn't agreed on what's going to be investigated.").[2]

On June 28, 2016, Mielke filed a recall petition against Boldt, Olson, and Stewart in Clark County Superior Court. He claimed that the councilors: (1) knowingly violated the Open Public Meetings Act of 1971 (OPMA), chapter 42.30

---

[2] Dean completed her investigation by July 6, 2016. Her report concluded that Madore's allegations of staff misfeasance by Orjiako, Cook, and Horne were "[i]n all material respects ... false." CP at 235. She also concluded that the staff did not engage in misleading behavior or deceive the Board or manipulate data. Dean concluded that Madore attempted to directly micromanage the Clark County Planning Department's work on the 2016 comprehensive plan and "attempted to pressure Orjiako and Planning staff not to exercise independent professional judgment." CP at 236.

RCW, by authorizing the hiring of Dean, (2) grossly wasted public funds by awarding the paper of record contract to *The Columbian* newspaper, (3) purposefully limited Mielke's and Madore's access to advice from the county prosecutor's office, and (4) abdicated legislative responsibilities by allowing McCauley to dissolve the county's Department of Environmental Services without legislative authorization.[3]

A sufficiency hearing was held on July 29, 2016. The trial court considered affidavits from the parties and reviewed a video recording of a board meeting. The court concluded the recall charges were factually and legally insufficient, and ruled that Mielke lacked standing to seek recall of Olson because he did not reside in her district. Mielke now appeals the superior court's order dismissing the recall petition.

ANALYSIS

Elected officials in Washington may be recalled for malfeasance, misfeasance, or violation of oath of office. WASH. CONST. art. I, §§ 33-34; RCW 29A.56.110. Courts act as a gateway to ensure that charges are factually and legally sufficient before they are placed before the voters, but our role is not to evaluate the truthfulness of those charges. RCW 29A.56.140; *In re Recall of Kast,* 144 Wn.2d 807, 813, 31 P.3d 677 (2001) (citing *In re Recall of Beasley,* 128

---

[3] Appellant appears to have abandoned the third allegation on appeal.

Wn.2d 419, 427, 908 P.2d 878 (1996); *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 764, 10 P.3d 1034 (2000)).

Recall petitions must be both legally and factually sufficient, and courts must ensure that persons submitting the charges "have some knowledge of the facts underlying the charges." *In re Recall of Wasson*, 149 Wn.2d 787, 791, 72 P.3d 170 (2003) (citing *In re Recall of Ackerson*, 143 Wn.2d 366, 372, 20 P.3d 930 (2001)). The facts alleged in a petition are sufficient to proceed to a ballot when, taken as a whole, they "identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office." *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984).

In determining whether a petition is factually sufficient, we assume the veracity of allegations made so long as they are reasonably specific and detailed. *See In re Recall of Sandhaus,* 134 Wn.2d 662, 668-69, 953 P.2d 82 (1998). "Voters may draw reasonable inferences from the facts; the fact that conclusions have been drawn by the petitioner is not fatal to the sufficiency of the allegations." *In re Recall of West*, 155 Wn.2d 659, 665, 121 P.3d 1190 (2005). Where commission of an unlawful act is alleged, the petitioner must show facts indicating the official had knowledge of and intent to commit an unlawful act. *In re Recall of Telford*, 166 Wn.2d 147, 158, 206 P.3d 1248 (2006).

7

Likewise, a recall petition is legally sufficient if it "state[s] with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office." *Chandler*, 103 Wn.2d at 274. An appropriate exercise of discretion does not constitute grounds for recall. *Id.* "The sufficiency of a recall petition is reviewed de novo." *Wasson*, 149 Wn.2d at 791 (citing *Teaford v. Howard*, 104 Wn.2d 580, 590, 707 P.2d 1327 (1985)). A reviewing court does not look to the truthfulness of the charges but instead considers whether, accepting the allegations as true, the charges on their face support the conclusion that the officer abused his or her position. *Id.* at 792 (citing *Teaford*, 104 Wn.2d at 586).

The superior court makes the initial sufficiency determination, subject to review by this court. *See* RCW 29A.56.140; *Kast,* 144 Wn.2d at 813. The charge, taken as a whole (which may include consideration of attached documents in certain circumstances) must be specific enough to give the elected official meaningful notice of the particular conduct challenged and why it is grounds for recall. *West*, 155 Wn.2d at 667 (citing *In re Recall of Lee*, 122 Wn.2d 613, 618, 859 P.2d 1244 (1993)).

I.    THE DEAN CONTRACT

Mielke argues that Boldt, Olson, and Stewart knowingly violated the OPMA when they allegedly held a clandestine meeting to approve Dean's contract. The OPMA allows closed executive sessions to discuss complaints or charges brought

8

against public officials or employees and to converse with legal counsel about potential litigation. RCW 42.30.110(1)(f), (i). Before convening in executive session, the presiding officer publicly announces the purpose for excluding the public and the time when the session will conclude. RCW 42.30.110(2). Mielke contends that neither he nor Madore were notified of this secret meeting as mandated by RCW 42.30.060, making any vote taken in such a meeting null and void.

Mielke seems to argue that because the Dean contract was executed, Boldt, Olson, and Stewart had to have met secretly to approve it. There is no direct evidence such a secret meeting occurred, but Mielke is correct that the record does not definitively establish when the Board discussed hiring an independent investigator, whether this was in a public meeting or executive session, whether the Board held a formal vote, or whether the county manager made the decision. Boldt, Olson, and Stewart's statements as to the nature and timing of the discussion appear to conflict.[4] Horne stated that he knew "four members . . . specifically voted in favor of going forward with th[e] investigation," but it is not clear whether

---

[4] *See, e.g.*, CP at 404 (Boldt, Olson, and Stewart state that "no investigation was needed"), 191, 196-97 (Stewart stated that the Board discussed the independent investigator at executive session and that Madore was present), 195 (Boldt stated that the Board had "talked about th[e] investigation for a month or more . . . [;] it was held in open session"), 202 (Olson noted the contract was preapproved by the Board).

he meant "voting" in the context of the OPMA. CP at 203. And McCauley states that he alone decided to pursue an independent investigator and hire Dean.

Assuming that Mielke is correct that there was an improper vote held in executive session, this alone is not a recallable offense. Where a recall petition alleges that an "official committed an unlawful act, factual sufficiency also requires that the petition contain a factual basis for both the proposition that the official intended to commit the act *and* 'that the official intended to act unlawfully.'" *In re Recall of Heiberg*, 171 Wn.2d 771, 778, 257 P.3d 565 (2011) (quoting *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 263, 961 P.2d 343 (1998)). If a board member believed that he or she was acting appropriately under the law, he or she is not subject to civil penalty under the OPMA. RCW 42.30.120; *see also Cathcart v. Andersen*, 10 Wn. App. 429, 436-37, 517 P.2d 980 (1974) (civil penalties not appropriate where uncontroverted affidavits established that attorney general advised law school faculty that meetings did not violate the OPMA). *But cf. In re Recall of Davis*, 164 Wn.2d 361, 371-72, 193 P.2d 98 (2008) (a contract entered outside of a public meeting, when the signatory exceeded the scope of her legal authority, is a legally sufficient ground for recall).

Boldt, Olson, and Stewart's uncontroverted statements establish that they relied on the county attorney's advice regarding the "unique" legal situation facing the Board and that they did not think they were violating any rule. CP at 199-203.

10

Because Boldt, Olson, and Stewart relied on legal advice and believed they were acting in accordance with the law, they did not knowingly violate the OPMA. *See Wasson*, 149 Wn.2d at 791 ("[T]he facts must show that the official intended to violate the OPMA." (citing *In re Recall of Anderson*, 131 Wn.2d 92, 95, 929 P.2d 410 (1997))).

Mielke also argues that Boldt, Olson, and Stewart violated their oath of office by allowing McCauley to contravene the county code when he failed to post the Dean contract on the county website as required by Clark County Code 2.09.030(2). Br. of Appellant at 11. The county code states that

> (1) The county manager is authorized to execute contracts in the amounts and subject areas set forth below for:
> (a) Contracts for the procurement of professional services not to exceed two hundred thousand dollars ($200,000) upon compliance with all other applicable state and federal laws. Professional service contracts funded by the general fund in an amount exceeding one hundred thousand dollars ($100,000) shall require prior council approval.

CLARK COUNTY CODE 2.09.030.

The chapter goes on to require that

> (2) Prior to the execution of any contract subject to subsection (1) of this section, the *county manager will publish all contracts and staff reports on the Clark County website* including a summary of the contract purpose, funding sources, and contract term. The county manager will also provide a copy of the staff reports and/or contracts to county councilors for their review and will not execute the documents for one week to provide any councilor an opportunity to review and request individual consideration of a document prior to execution. Contracts signaled for individual consideration will be approved by a majority vote of the council at a public meeting.

CLARK COUNTY CODE 2.09.030(2) (emphasis added).

McCauley stated that he believed he was not required to post the Dean contract on the county website[5] because (1) he believed it was within his authority as executive to execute the contract alone, (2) it contained sensitive and confidential information, and (3) not posting it was consistent with his past practices involving contracts for investigations of county employees. Mielke asserts that Horne admitted wrongdoing when he stated at a public meeting that the contract "wasn't posted on the grid, and the Ordinance [Clark County Code 2.09.030(2)] requires it to be posted on the grid." Br. of Appellant at 11 (emphasis omitted) (citing CP at 199). However, this mischaracterizes Horne's full statement. Horne went on to explain that the situation facing the Board consisted of "unique" issues not contemplated by the county code. He explained that the code did not require the Dean contract to be preapproved by the Board and characterized the contract as "pre-approved." CP at 199. Nor did the code contemplate the current legal situation—an employment action against a sitting councilor (i.e., Madore).

Although McCauley may have exceeded his authority by failing to post the Dean contract to the county website, this does not make Boldt, Olson, or Stewart subject to recall since they believed McCauley had authority and they relied on

---

[5] Clark County maintains a website to post documents for public access. This website is referred to as "'The Grid.'" CP at 83 n.2. Two grids exist: one for Board documents and another for proposed contracts.

12

legal advice. *Cf. Davis*, 164 Wn.2d at 371-72. We affirm the trial judge's conclusion that this allegation is insufficient to sustain a recall.

## II.    NEWSPAPER OF RECORD

Mielke argues that Boldt, Olson, and Stewart grossly wasted public funds by awarding the county's newspaper of record contract to *The Columbian* instead of *The Reflector* "as a reward for the aggressive attacks on their political opponents Madore and Mielke." Br. of Appellant at 25. Though Mielke did not argue this issue at the sufficiency hearing, we may nevertheless accept review of claimed errors not appealed as a matter of right. CP at 558 (at trial, Mielke's attorney conceded "that the case law does establish the discretion" of the legal newspaper contract but wished to preserve the issue for appeal); *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015) (citing *State v. Russell*, 171 Wn.2d 118, 122, 249 P.3d 604 (2011)).

Counties must designate a newspaper to serve as the official newspaper of record, and the "county legislative authority shall let the contract to the best and lowest responsible bidder, giving consideration to the question of circulation in awarding the contract, with a view to giving publication of notices the widest publicity." RCW 36.72.075. Mielke contends that this provision provides "little discretion" to decision-makers in awarding the newspaper contract. Br. of Appellant at 23. He largely focuses on the "lowest" bidder language in the statute,

arguing that Boldt, Olson, and Stewart voted for the more expensive newspaper "quid pro quo" for negative editorial coverage of Mielke and Madore. *Id.* at 23 (citing CP at 433); CP at 96-99.

RCW 36.72.075 does not define the term "best and lowest responsible bidder." "'The determination of the municipal officials concerning the lowest responsible bidder will not be disturbed by the courts, unless it is shown to have been influenced by fraud, or unless it is an arbitrary, unreasonable misuse of discretion.'" *Chandler*, 103 Wn.2d at 275 (quoting 10 EUGENE MCQUILLIN, MUNICIPAL CORPORATIONS § 29.73, at 398 (3d rev. ed. 1981)). This court held in 1939 that counties have discretion in selecting an official newspaper. *King County v. Superior Court*, 199 Wash. 591, 92 P.2d 694 (1939) (paper upheld as official county newspaper despite its limited circulation and being published by a political group). The plain meaning of the statute supports this view.

The meaning of a statute is a question of law reviewed de novo. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001) (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001)). If a statute's meaning is plain on its face, courts give effect to that meaning. *Id.* (citing *State v. Chapman*, 140 Wn.2d 436, 450, 998 P.2d 282 (2000)). If the language is ambiguous or unclear, courts may look to the statutory scheme as a whole or related statutes. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002).

14

RCW 36.72.075 requires that the "best and lowest responsible bidder" be selected, while also considering circulation and publicity. This statute does not require a county to select its newspaper based solely on the lowest monetary bid. In fact, it requires decision-makers to balance cost with other factors. Here, the Clark County purchasing manager informed the Board that the previous newspaper of record, *The Reflector*, had compromised the County's publishing deadlines, would require duplicate postings in other local papers, and in total would increase publishing costs. In light of this information, Boldt, Olson, and Stewart did not improperly exercise discretion in voting for *The Columbian* and this allegation was not a basis for recall. *In re Recall of Reed*, 156 Wn.2d 53, 59, 124 P.3d 279 (2005) ("an elected official cannot be recalled for appropriately exercising the discretion granted him or her by law" (citing *Kast*, 144 Wn.2d at 815)); *Chandler*, 103 Wn.2d at 275. This charge was properly dismissed.

III.    DISSOLUTION OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES

Lastly, Mielke argues that Boldt, Olson, and Stewart abandoned their legislative responsibilities by allowing McCauley to dissolve the county's Department of Environmental Services without requiring a vote by the Board as required by RCW 36.40.100.

Essentially, Mielke contends that because the Board sets a department's budget, only the Board can transfer or revise that department. But McCauley

testified that as manager, he had authority to reorganize administrative departments such as the Department of Environmental Services and he did not need the Board's consent even to eliminate the department. Boldt, Olson, and Stewart state that they did not take part in or direct McCauley regarding the reorganization. The councilors believed McCauley had authority under the Clark County Charter to dissolve or reorganize administrative departments. Even assuming, without deciding, that McCauley lacked authority to reorganize a county department, there is no evidence that Boldt, Olson, or Stewart intended to violate the law. *In re Recall of Carkeek*, 156 Wn.2d 469, 474, 128 P.3d 1231 (2006) ("while some inferences are permissible, '[o]n the whole, the facts must indicate an intention to violate the law'" (alteration in original) (quoting *In re Recall of Feetham*, 149 Wn.2d 860, 865, 72 P.3d 741 (2003))). Thus, this charge is not legally sufficient and was properly dismissed. This charge is not legally sufficient to support the recall action.[6]

---

[6] Mielke also appeals the trial court's conclusion that he lacked standing to recall Olson. The Washington State Constitution provides that a public official is subject to recall "by the legal voters of the state, or of the *political subdivision* of the state." CONST. art. I, § 33 (emphasis added). "Political subdivision" is not defined in RCW 29A.56.110 (codifying CONST. art. I, § 33). Respondents contend that *Teaford* controls, urging this court to conclude that a "political subdivision" means an "officer's constituency." 104 Wn.2d at 583. *Teaford* states that an "officer's constituency *can* initiate recall proceedings" under article I, section 33. *Id.* (emphasis added). But the *Teaford* court did not conclude that only an officer's constituency in a political subdivision can initiate a recall action. Indeed, this appears to be an issue of first impression. As Professor Hugh Spitzer notes, a "political subdivision" is "a concept that is defined differently in at least half dozen statutes but is used much more frequently in an undefined way." Hugh Spitzer, *A Local Government By Any Other Name*, PROCEEDINGS OF WASH. STATE ASSOC. OF MUN. ATT'YS 7-7 to 7-8 (2009), http://mrsc.org/getmedia/D2F2FDF4-9C9C-4D03-8945-

IV. COSTS

Boldt, Olson, and Stewart argue that the recall allegations are frivolous and that they are entitled to compensatory damages under RAP 18.9(a). An appeal is frivolous if, considering the whole record, the court is convinced there are no debatable issues on which reasonable minds may differ and it is totally devoid of merit. *Fay v. Nw. Airlines, Inc.*, 115 Wn.2d 194, 200-01, 796 P.2d 412 (1990) (citing *Green River Cmty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986)). Mielke's allegations, while insufficient to sustain a recall petition, were not so totally devoid of merit such that there was no possibility of reversal. This appeal was not frivolous. Furthermore, "a recall petitioner should not be made to pay an elected official's attorney fees merely because the petitioner has brought a 'frivolous recall petition.'" *Pearsall-Stipek*, 141 Wn.2d at 783 (quoting *Pearsall-Stipek*, 136 Wn.2d at 267).

Boldt, Olson, and Stewart also seek costs under RAP 14.2-14.4 as the substantially prevailing party on review. Mielke's allegations are legally and factually insufficient to sustain recall charges, and Boldt, Olson, and Stewart substantially prevailed on appeal. *See Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 817, 225 P.3d 213 (2009) (citing RAP 14.2). Therefore, we award

---

0A107182A50B/wsama534-7.aspx [https://perma.cc/SG6R-9U7V]. It is not necessary for us to resolve this issue here and we decline to reach it.

17

them costs on appeal, to be determined by the commissioner or clerk in accordance with RAP 14.6.

## CONCLUSION

Mielke's recall charges are insufficient to proceed to the voters. We affirm the superior court's dismissal of the recall petition and award Boldt, Olson, and Stewart costs on appeal.

González, J.

WE CONCUR:

Madsen, J.

Johnson, J.

Owens, J.

Fairhurst, C.J.

Stephens, J.

Wiggins, J.

Gordon McCloud, J.

Yu, J.