

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE _____ SEP 1 2 2019
Fairhurst, CJ.
CHIEF JUSTICE

This opinion was
filed for record
at 8am on Sept 12, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Recall Petition of<br><br>JILL RITTER,<br><br>                Respondent. | NO. 97305-9<br><br>EN BANC<br><br>Filed _____ SEP 1 2 2019 |

STEPHENS, J.—Two voters in the city of Tonasket, Washington, filed a recall petition, seeking to remove respondent Jill Ritter from her position on the Tonasket City Council. As detailed below, the Okanogan County Superior Court determined all six of the allegations in the petition were insufficient to warrant a recall election. One of the two petitioners, appellant Brenda Jones, sought review in this court. We affirm the superior court's dismissal of all six charges.

## BACKGROUND

The recall petition alleges that Councilwoman Ritter committed the following acts of misconduct warranting her recall:

1. Attempted influence over a Tonasket Police Officer's investigation of her relative's son;

2. Improperly questioning the Chief of Police about the same Tonasket Police Officer's investigation under the guise of a budget meeting;
3. Improperly obtaining a key to and entering the Tonasket Police Department with the Mayor to obtain and review Personnel Files and to install cameras within the Police Department;
4. Falsely and publicly claiming a Tonasket Police Officer was on a *Brady*[1] list; and lying about verifying this claim;
5. Conspiring to disband the Tonasket Police Department in favor of a contract for police services with the Okanogan County Sheriff; and compromising the integrity of investigative materials and evidence in the process; and
6. Improperly withholding public records.

Clerk's Papers (CP) at 16.

In addition to the recall petition, the trial court considered several declarations submitted by petitioner Jones, Diane MacGregor-Foreman, Jose Perez, John Cruz, Darin Odegaard, and Brittany Wilson. It also considered declarations from respondent Ritter, as well as from Michael Howe and Alice Attwood. After a hearing, the trial court dismissed all six charges, finding them factually and legally insufficient to sustain further action. Jones sought review in this court, assigning error to the trial court's rulings on every charge. Appellant's Br. (App. Br.) at 1.

## ANALYSIS

A voter who seeks to recall an elected official must charge that the official "committed an act or acts of malfeasance, or an act or acts of misfeasance while in

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

office, or has violated the oath of office." RCW 29A.56.110. The statute defines

these terms:

> (1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
>     (a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
>     (b) Additionally, "malfeasance" in office means the commission of an unlawful act;
> (2) "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

*Id.*

Before the sponsors of a recall may seek supporting signatures, the superior

court of the county in which the officer subject to recall resides must determine that

the petition is both factually and legally sufficient. RCW 29A.56.130(2), .140,

.150(2); *In re Recall of Pepper*, 189 Wn.2d 546, 553, 403 P.3d 839 (2017) (citing

*Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)).

"A recall petition is legally sufficient if it "'state[s] with specificity substantial

conduct clearly amounting to misfeasance, malfeasance or violation of the oath of

office'" and there is no legal justification for the challenged conduct." *Recall of*

*Pepper*, 189 Wn.2d at 554 (alteration in original) (quoting *In re Recall of Boldt*, 187

Wn.2d 542, 549, 386 P.3d 1104 (2017) (quoting *Chandler*, 103 Wn.2d at 274)). The

petition must "identify the "'standard, law, or rule that would make the officer's

conduct wrongful, improper, or unlawful.""" *Id.* at 555 (quoting *In re Recall of Bolt*, 177 Wn.2d 168, 181, 298 P.3d 710 (2013) (quoting *In re Recall of Ackerson*, 143 Wn.2d 366, 377, 20 P.3d 930 (2001))).

A petition is factually sufficient if it alleges acts or failures to act that, without justification, would constitute misfeasance, malfeasance, or a violation of the oath of office. *Id.* If the petition alleges that the subject committed an unlawful act, it is factually sufficient only if it also alleges "'facts indicating the official had knowledge of and intent to commit an unlawful act.'" *Id.* (quoting *Recall of Boldt*, 187 Wn.2d at 549 (citing *In re Recall of Telford*, 166 Wn.2d 148, 158, 206 P.3d 1248 (2009))). A petitioner need not have firsthand knowledge of the facts supporting a petition but must present some evidence beyond mere belief or speculation that the charges are true. *Id.* "The purpose of requiring factual sufficiency is to ensure that charges, 'although adequate on their face, do not constitute grounds for recall unless supported by identifiable facts.'" *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990) (quoting *Teaford v. Howard*, 104 Wn.2d 580, 585, 707 P.2d 1327 (1985)).

The sufficiency of a recall petition is reviewed de novo. *Recall of Boldt*, 187 Wn.2d at 549.

A. Instead of Identifying Any Specific Error in the Trial Court's Rulings, Jones Argues Broadly That the Court Erred by Considering Any of the Respondents' Factual Pleadings

The trial court ruled that the petition was both factually and legally insufficient with respect to every charge. In her briefing in this court, Jones does not specifically identify any single error in the trial court's rulings (with one exception, discussed below). Instead, Jones argues generally that a respondent to a recall petition may file only *legal* pleadings in the trial court, not factual ones. App. Br. at 6-7. Jones contends that the trial court therefore erred by even considering the respondents' factual pleadings and that this means our "review must be nearly entirely *de novo*." App. Br. at 7. As noted, this is always the standard of review in a recall petition. Under the umbrella of that general argument, Jones "stands on the factual allegations in the initial Recall Petition and the arguments of counsel at the sufficiency hearing." App. Br. at 7 (citation omitted).

Jones is correct that the trial court does not determine the *truth* of the charges when it rules on sufficiency. RCW 29A.56.140 (at a sufficiency hearing, "[t]he court shall not consider the truth of the charges, but only their sufficiency"). Contrary to her argument, however, a trial court does not err by considering evidence submitted in response to a recall petition; such evidence is admissible "for the purpose of determining whether there is any factual basis for the charges." *In re Recall of*

*Beasley*, 128 Wn.2d 419, 427, 908 P.2d 878 (1996); *see, e.g., Recall of Wade*, 115 Wn.2d at 549-51 (allegations that male candidate was ranked ahead of female candidate "sometime in the selection process," combined with the fact that female candidate was later selected, were not factually or legally sufficient to sustain a charge that school board members violated the law against gender discrimination; in reaching that conclusion, the court could consider the existence of affidavits by school board members attesting to the reasons underlying their decision).

As detailed below, none of the trial court's sufficiency rulings rested on a weighing of conflicting evidence or a determination of credibility. Jones therefore fails to identify any grounds for reversing the trial court's rulings on factual sufficiency. Additionally, Jones fails to challenge any of the trial court's rulings on legal sufficiency, all independent, adequate bases for dismissing each charge. The following section examines each charge and ruling and explains why the trial court properly dismissed it.

B. We Affirm the Trial Court's Dismissal of Every Charge

In support of charges 1 ("[a]ttempted influence over a Tonasket Police Officer's investigation of her relative's son," CP at 16) and 2 ("[i]mproperly questioning the Chief of Police about the same Tonasket Police Officer's investigation under the guise of a budget meeting," *id.*), Jones alleged that, after

Tonasket Reserve Officer John Cruz (R.O. Cruz) stopped a relative of Ritter's (Josh McDaniel) and issued him citations for traffic infractions and failure to obey a police officer, Josh McDaniel's father (Bob McDaniel) told Ritter, R.O. Cruz, and two others present at a meeting that he intended to investigate R.O. Cruz's background and report back to Ritter. *Id.* at 17. Jones also alleged that, about two weeks after this meeting, Mayor Dennis Brown summoned Police Chief Darin Odegaard to a "putative budget meeting," where Ritter was also in attendance. *Id.* at 17-18. Jones contended that Ritter used the meeting to inquire into R.O. Cruz's background, admittedly at the request of Bob McDaniel, and that Chief Odegaard objected to the investigation and refused to answer any questions. Jones argued that this violated RCW 35A.12.100, which vests "general supervision of the administration of government and city interests" in the mayor. *Id.* at 18. Jones also claimed it was a violation of Ritter's oath to impartially perform her duties. *Id.*

The trial court found both of these charges to be factually and legally insufficient. With respect to charge 1, it noted that Ritter filed a declaration attesting that Josh McDaniel was not related to her by blood or marriage, while Jones offered no evidence that the two were related. Without evidence of a familial relationship, there was nothing to sustain the inference of impartiality. The court also concluded that the evidence submitted by Jones in support of charge 1 (notes from the meeting

with Bob McDaniel) failed to indicate any statements by Ritter relating to R.O. Cruz, much less an attempt to influence an investigation. *Id.* at 5. With respect to charge 2, the court noted that, according to the petition, the mayor was present for all of the allegedly inappropriate questioning. *Id.* at 6. Because the mayor has hiring and firing authority and did not object to any of the questioning and because Ritter allegedly stopped all questioning as soon as Chief Odegaard objected, the court concluded that the petition did not demonstrate any intent to violate the law (RCW 35A.12.100).

At the outset, it should be noted that the allegations in the petition are ambiguous as to which McDaniel is actually Ritter's "relative." The enumerated allegation states that Ritter interfered in the investigation of "her relative's son," CP at 16, while the narrative allegation states that this investigation arose from "a traffic stop on Josh McDaniel, a relative of Councilwoman Ritter's," *id.* at 17. Presumably, if one McDaniel is Ritter's relative, then the other is as well. In any event, the record before this court contains no sworn statements relating to this factual question, only the allegations in the petition itself. The report of proceedings (RP), however, indicates that at some point, the trial court also considered a declaration by Ritter attesting that "there is no relationship, marriage, blood relation at all to . . . Mr. McDaniel." RP at 42. In her brief in this court, Jones takes issue with the trial

court's consideration of this evidence: "It may well be that the Petitioner is incorrect about a familial relationship between Ms. Ritter and Mr. McDaniel . . . [b]ut this rebuttal should not be raised to the Superior Court." App. Br. at 6. The brief does not otherwise raise any specific objection to the trial court's rulings on charges 1 and 2.

The trial court did not err. A superior court must consider the evidence underlying an allegation, in order to determine the factual sufficiency of a recall petition. *Recall of Beasley*, 128 Wn.2d at 427. With respect to charge 1, the trial court properly found that allegations that Ritter interfered on behalf of a relative were factually insufficient where the *only* admissible evidence showed Ritter was not related to the person (or persons) in question. This was not an impermissible weighing of evidence; it was a proper determination that the allegations were speculative. *See Recall of Boldt*, 187 Wn.2d at 549. With respect to charge 2, Jones asserts Ritter's questions about R.O. Cruz were improper because only the mayor has authority to hire and fire police officers. CP at 18. The trial court properly found that the record contained no evidence that Ritter sought to supersede the mayor's authority in this area.

We affirm the trial court's dismissal of charges 1 and 2.

In support of charge 3 ("[i]mproperly obtaining a key to and entering the Tonasket Police Department with the Mayor to obtain and review Personnel Files and to install cameras within the Police Department," *id.* at 16), Jones alleged that on December 21, 2018, Mayor Brown directed the clerk and administrator of the Tonasket Police Department to provide him with keys to the police department. *Id.* at 18. Jones asserted that the next day Officer Jose Perez observed Ritter, Mayor Brown, and a third person use the keys to enter the police department to install video surveillance equipment. *Id.* at 19. According to Jones, when the clerk and administrator (MacGregor-Foreman) returned from her Christmas vacation she found that she could not situate her desk so as to prevent the new surveillance camera from recording her computer screen. *Id.* MacGregor-Foreman then contacted the sheriff's office and the city prosecutor's office to express concerns that the camera placement violated privacy laws, and the sheriff's office responded by sending a deputy to retrieve the surveillance equipment. *Id.* Jones alleged that this violated "Chapter 35A.12 or 35A.11 [RCW]," which do not vest the city council with "the authority to regulate the internal affairs of the Police Department, an executive office." *Id.* Jones also claimed it violated chapter 10.97 RCW, the Washington State Criminal Records Privacy Act.

The superior court determined this charge to be factually and legally insufficient. The court found it was undisputed that, after Mayor Brown fired Chief Odegaard and R.O. Cruz, city Clerk Alice Attwood and Councilmember Marylou Kriner contacted the city attorney about installing cameras in the police department for security purposes. The court found that the installation was temporary and was removed immediately after officials were notified about privacy concerns. It therefore concluded that the petition did not demonstrate any attempt to violate the law or engage in willful criminal conduct. *Id.* at 6.

The trial court did not err. With respect to this charge, Jones did not even allege any intent to violate a law, let alone support such an allegation with evidence. The petition alleges, at most, a mistake that Ritter and Mayor Brown made together and then corrected as soon as it was brought to their attention. Those allegations do not indicate a knowing and intentional violation of any privacy law, nor do they suggest any attempt to usurp the mayor's authority. They are therefore legally insufficient to sustain the petition. *See Recall of Boldt*, 187 Wn.2d at 549.

We affirm the dismissal of charge 3.

In support of charge 4 ("[f]alsely and publicly claiming a Tonasket Police Officer was on a *Brady* list; and lying about verifying this claim," CP at 16), Jones alleged that Bob McDaniel attended a Tonasket City Council meeting on or about

January 2, 2019, where he "implied that Ofc. Perez was on a *Brady* list in Spokane County." *Id.* at 20. Jones asserted that Ritter stated she verified this through a phone call to the Spokane County Prosecutor's Office. *Id.* Jones further alleged that on or about January 15, 2019, "such a list was obtained from Spokane County," which did not contain Perez's name, and that after Ritter was told of this fact, at a January 22, 2019 city council meeting, she claimed she had "found the information on the internet." *Id.* According to Jones, this proves that Ritter made at least one false statement and also invaded the mayor's authority to supervise and administer government and city interests. *Id.*

The superior court determined this charge to be factually and legally insufficient. It found that no minutes or other recording of either city council meeting was provided but that, according to the evidence submitted by Jones, several individuals made statements about Perez at the January 2 meeting. The court also concluded that, since all of this alleged lying took place after the city council passed Ordinance 798 (discussed below), which disbanded the police department on conditions, the evidence did not suggest that Ritter violated any law or intended to violate her duties as a councilmember. *Id.* at 7. In other words, the court determined that the evidence suggested, at most, that several people might have made critical remarks about a former Tonasket police officer at a January 2, 2019 public meeting.

-12-

The trial court's ruling is correct. The record before this court contains a declaration by MacGregor-Foreman attesting that Ritter publicly stated, on January 2, 2019, that she had "made a call and confirmed" that Perez was on a *Brady* list, *id.* at 56, and then later publicly stated, on January 22, 2019, that "she had found the information on the internet," *id.* at 57. Contrary to Jones's allegations, this does not prove that Ritter made a false statement. The lack of context provided makes it impossible to determine whether these two statements are, in fact, mutually exclusive, and this allegation is therefore insufficient to sustain the petition. *See Recall of Ackerson*, 143 Wn.2d at 373 (petitioner's sworn statement that she heard respondent admit to pocketing campaign contributions was factually insufficient to sustain a charge of violating campaign finance laws where alleged admission was too vague and lacking in context to indicate what actual conduct occurred).

We affirm the trial court's dismissal of charge 4.

In support of charge 5 ("[c]onspiring to disband the Tonasket Police Department in favor of a contract for police services with the Okanogan County Sheriff; and compromising the integrity of investigative materials and evidence in the process," CP at 16), Jones alleged that Ritter "violated her oath to faithfully and diligently perform her duties of office" when she and other councilmembers voted to adopt Ordinance 798, which temporarily suspended the operations of the Tonasket

Police Department. *Id.* at 21. Jones acknowledged that cities need not maintain their own police departments and may instead provide police services through contracts with counties. Jones contended, however, that the manner in which Ordinance 798 was adopted was too hasty to constitute good governance, as it forced police department employees to "scramble" to store and delete files in time for the transition. *Id.*

The superior court found this charge factually and legally insufficient. It concluded that the city council adopted Ordinance 798 only after Mayor Brown fired the chief of police and another officer and the city was therefore "without a viable police force." *Id.* at 8. The court found this was a proper exercise of the city council's authority, which Ritter initiated only after consulting with the city attorney.

This ruling is correct. The exercise of discretionary authority cannot be grounds for recall unless it is "unreasonable." *In re Recall of Kast*, 144 Wn.2d 807, 817-18, 31 P.3d 677 (2001). Jones alleged the city council adopted Ordinance 798 too quickly, but the trial court found the undisputed facts established a reasonable basis for the city council's action. Under that circumstance, the petition is legally insufficient. *See id.* (where responsive pleadings showed officials had legal justification for ejecting an individual from a public meeting; petition based on that ejection was legally insufficient).

We affirm the dismissal of charge 5.

In support of charge 6 ("[i]mproperly withholding public records," CP at 16), Jones alleged that she made two public record requests to Tonasket city agencies: one for "copies of any public records pertaining to the camera installation in the Tonasket Police Department"[2] and one for "all cell phone records, to include calls, te[x]ts, Facebook Messenger threads, and other communications with city officials related to city business contained on Councilwoman Ritter's phone(s)."[3] *Id.* at 21. Jones acknowledged that some records were produced in response to these requests but alleged that others must have been withheld. She asserted that some of the text

---

[2] Jones's written request for camera-related records read, in relevant part:
I am requesting an opportunity to inspect or obtain copies of public records that pertain to the information regarding the breach of the security of the Police Department. Who authorized the placement of the cameras and who paid for the cameras and the installation. Did the placement of the cameras violate the privacy of the public and/or violate the agreement to Spillman? Who had access to the footage of the camera system. Who had keys and who breached the police department other than the Police officers themselves and the Police Clerk. Who authorized the disbursement of the keys to those individuals.
CP at 27.

[3] Jones's request for cell phone records read, in relevant part:
I am requesting an opportunity to inspect or obtain copies of public records that pertain to city business ALL CELL PHONE RECORDS, INCLUDING CALLS, TEXT MESSAGES, FACEBOOK MESSENGER MESSAGES MADE TO AND FROM CITY OFFICIALS AND ALL CITY BUSINESS CONDUCTED OR DISCUSSED ON YOUR PERSONAL OR FORREST SERVICE WORK CELL PHONES WITHIN THE DATES OF DEC. 17TH THROUGH TO Dec. 30th.
CP at 29.

and Messenger threads produced in response to the first request were incomplete, that no call logs at all were produced, and that no receipts or contracts related to equipment or installation were produced in response to the second request. Jones claimed this violated the Public Records Act, chapter 42.56 RCW. CP at 22.

The superior court found this charge factually and legally insufficient because it was based only on "speculative statements and . . . unwarranted conclusions." *Id.* at 9.

This ruling is correct. Neither the original petition nor Jones's brief in this court explains the basis for the inference that some responsive records must have been withheld, and there are several readily apparent problems with Jones's theory. For example, Jones complained that no call logs were produced, *id.* at 21, but she failed to request any such logs, *id.* at 29. Jones also complained about the response to the camera-related request, *id.* at 21-22, but that request was made to the Tonasket Police Department, *id.* at 27. There is no indication that Ritter is the custodian of records for that agency.

We affirm the dismissal of charge 6.

## CONCLUSION

The trial court correctly held that Jones's recall petition is factually and legally insufficient. The court did not improperly engage in fact-finding, and there is no

prohibition against considering factual pleadings by the respondent to a recall petition. We affirm the trial court's ruling in its entirety and dismiss the petition.

_____ Stephens, J.

WE CONCUR:

_____ Fairhurst, C.J.

_____

_____ Madsen, J.

_____

_____ Wiggins, J.

_____ González, J.

_____

_____